CONNIE WILKINS, JR., *v.* STATE OF MARYLAND

[No. 114, September Term, 1967.]

*Decided August 19, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Sherman W. West* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Howard S. Chasanow, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Connie Wilkins, Jr., was convicted in the Circuit Court for Prince George's County by a jury, Judge Perry G. Bowen presiding, of robbery with a deadly weapon (count one) and assault and battery (count five). Appellant was sentenced to a term of twenty years in the Maryland Penitentiary on each count, sentences to run concurrently. From these convictions, the appellant has appealed.

Appellant raises ten contentions in this appeal:

1. That the lower court lacked jurisdiction over the defendant and that the defendant was denied due process of law by the fact that he never voluntarily placed himself under the jurisdiction of the court and had never been afforded an extradition hearing.

2. That the Circuit Court for Prince George's County lacked jurisdiction over the defendant and that the defendant was denied due process of law by the fact that he was never arraigned.

3. That the lower court committed reversible error in refusing to provide appellant with a transcript of the argument of counsel.

4. That lower court erred in refusing to provide the appellant with notes made by the trial judge.

5. That the defendant was denied due process of law and his right to a fair and impartial trial by the manner in which the State conducted a lineup in court prior to the trial.

6. That the court committed reversible error and the defendant was denied due process of law, a fair and impartial trial, and his Sixth Amendment right to compulsory process for witnesses by the failure of the trial court to subpoena witnesses for the defense.

7. That the lower court committed reversible error in allowing the State to impeach a defense witness with her past criminal record solicited from that witness while all witnesses were sequestered.

8. That the verdict of the jury was contrary to and against the weight of the evidence in that the defendant was not sufficiently identified as the perpetrator of this offense.

9. That the verdicts of guilty as to counts one and five of the indictment were invalid since count five merged into count one.

10. That the sentence of twenty years imposed as to count five of the indictment (assault) was excessive and was cruel and unusual punishment.

On March 8, 1966, at approximately 6:20 p.m., Samuel Pellerito, one of the owners, his brother Hugo, a partner, and their manager, Nicholas Mancini, were held up and robbed by three armed gunmen as they prepared to close their place of business known as Sam's Car Wash. Sam Pellerito, who was checking out the time cards, testified that he saw the three robbers come around the side of the building as his brother and Mancini were at the door. Each carried a gun in one hand and held a handkerchief over his face. He testified that they began pistol-whipping his brother and Mancini, knocking them to the floor,

and at gunpoint forced him to open the safe. After the safe was opened, the gunman who had knocked him to the floor reached into the open safe and began scooping out the money. He testified that at this time he was able to get a good look at the robber, who had removed his handkerchief and was only two feet away, identifying him as the appellant. He was also able to identify one of the other robbers, who had temporarily removed his handkerchief. Thirteen hundred dollars was taken from the safe. After cleaning out the safe, the robbers fled. Sam Pellerito was the only victim able to identify any of the gunmen. He testified that the day after the robbery he was shown a group of police photographs and was able to identify the appellant and another of the robbers. He further told the court and jury that immediately prior to trial he had picked out the appellant from a group of about twenty-five people who had been seated in the courtroom with appellant in their midst. In his testimony, Pellerito was positive that this was the man that robbed him.

In addition to Samuel Pellerito, the State produced Nicholas Mancini, the manager of the car wash. Mr. Mancini described the robbery and the beatings inflicted by the robbers, but was not able to identify appellant. The State also produced Thomas E. Howie, Deputy Sheriff for Prince George's County, and Glenn Moffett, a United States Marshal, who related to the jury the circumstances surrounding the pretrial identification of the appellant by the witness Pellerito.

A motion for a verdict of acquittal was made at the end of the State's case and denied by the court.

The appellant produced in his behalf his mother, Mary Wilkins, and his girl friend, Barbara Robinson, both of whom testified that he was with them in Washington, D. C. at the time the crime was committed. Appellant also called as witnesses, Jerrold V. Powers, his attorney in a prior case, who testified as to the circumstances surrounding the identification immediately prior to the trial; Samuel Pellerito; Nicholas Mancini; William H. Rutherford; and Louis Blancato. At the close of the whole case, the motion for verdict of acquittal was renewed and denied.

14

I

Appellant first contends that the lower court lacked jurisdiction to try him because he was not extradited from the District of Columbia Correctional Institute in Lorton, Virginia, to Maryland, in accordance with the Uniform Criminal Extradition Act, Article 41, §§ 16-43, Maryland Code (1957), and that he was thereby denied due process of law.

The appellant, a Federal prisoner serving a 5 to 15 year sentence for a conviction in the United States District Court for the District of Columbia in the D. C. Correctional Institute in Lorton, Virginia, was brought into Maryland for trial under a writ of habeas corpus ad prosequendum. He contends in argument that the mode of bringing him before the Maryland courts was improper and in violation of his rights of due process of law, in that he should have been formally extradited to Maryland in compliance with the Uniform Criminal Extradition Act, Article 41, §§ 16-43, Maryland Code (1957), and that the court lacked jurisdiction to try him.

This contention is devoid of merit. A Federal prisoner, under § 4085 of Title 18, U.S.C.A., may be taken into a State court for trial with the consent of the Attorney General of the United States, and his production is wholly a matter for the Attorney General to determine; *Marsino v. Higgins,* 10 F. 2d 534, affirmed 270 U. S. 627, and the prisoner may not complain, *Chapman v. Scott,* 10 F. 2d 156, affirmed 10 F. 2d 690, cert. denied, 270 U. S. 657; *Troyan v. United States,* 240 F. Supp. 383. Even in the absence of statute, the Attorney General has the authority to transfer a Federal prisoner to a State court for trial as a matter of comity between sovereigns. *Ponzi v. Fessenden,* 258 U. S. 254, 261, 42 S. Ct. 309, 66 L. Ed. 607; *State v. White,* 264 P. 647.

Moreover, this Court decided this contention adversely to the appellant in *Wilkins v. State,* 4 Md. App. 334, 338-39, 242 A. 2d 808.

II

Appellant next contends that Maryland Rule 719 was violated, in that he was not arraigned pursuant to the terms of the rule, and, therefore, this lack of arraignment deprived the Circuit Court for Prince George's County of jurisdiction to try

the case, and that he was thereby deprived of due process of law. He admits that the docket entries reveal that he was served with a copy of the indictment and that an attorney was appointed for him, but avers that he was never formally arraigned, never heard a reading of the indictment, and never entered a formal plea, as required by sections a. and d. of the rule.[1]

We are unable to agree with appellant's contention that his conviction must be reversed for non-compliance with the rule. Substantial compliance with Rule 719 has been held sufficient. *Gouker v. State,* 224 Md. 524, 168 A. 2d 521; *Ayala v. State,* 226 Md. 488, 174 A. 2d 160. In *Ayala v. State, supra,* at p. 491, the Court said: "While Rule 723 c. (now Rule 719 d.) requires that the record shall affirmatively show compliance with the requirement for an arraignment, it has been established that this Court will not resort to fine technicalities and reverse a conviction 'simply because the record does not show positively that the appellant actually had been formally arraigned or informed of the substance of the charge. *Gouker v. State, supra,* at p. 527. The authorities are in general agreement that the formalities once observed upon arraignment are no longer required. It is sufficient if it appears that what has been done amounts in substance to an arraignment. 4 Wharton, *Criminal Law and Procedure,* § 1805; 14 Am. Jur., *Criminal Law,* § 252; 22 C. J. S., *Criminal Law,* § 411 (1)'."

The essential inquiry therefore narrows itself down to whether or not there has been substantial compliance with Rule 719 a. The docket entries reveal that the indictment was filed on April 1, 1966. Counsel was assigned to him on November 2, 1966 (at which time he was a Federal prisoner); a petition and order for a writ of habeas corpus ad prosequendum was filed November 30, 1966; appellant filed a motion for a continuance on December 1, 1966, which was granted; on January 9, 1967, the bench warrant was returned "cepi", and a copy of

---

1. Section a. of the rule provides in pertinent part that "[a]rraignment shall be conducted in open court and shall consist of reading the indictment to the accused or stating to him the substance of the charge and calling on him to plead thereto." Section d. provides that "[t]he docket entries or transcript shall affirmatively show compliance with this rule."

the indictment was given to appellant; a motion for discovery was filed by appellant on February 28, 1967, and trial began on March 9, 1967.

The record shows that appellant took an active role in his defense, both in the selection of the jury and the conduct of the case, and showed complete familiarity with the crime charged. While the record fails to show any formal arraignment or the taking of a plea, the lower court and jury as well as the State and appellant were apparently satisfied that appellant had been arraigned and that the plea was not guilty.

The purpose of an arraignment is to acquaint the accused with the charge, advise him of his right to counsel, see that he is properly represented, and afford him time to plead. The record shows that this was done in the instant case, and that appellant was given every protection afforded him by the rule. We conclude therefore that the record in the case before us shows substantial compliance with Maryland Rule 719.

In addition, we think that the appellant effectively waived the right to demand that the court either formally arraign him or inform him of the substance of the offense with which he was charged when he elected to be tried by a jury, actively engaged in the selection of the jury, and went to trial without so much as suggesting to the court that it had not complied with the rule. Here, it is apparent that the appellant knew the nature of the charge against him and had a full opportunity to defend himself. There was no showing that the appellant was in any way prejudiced by the omission of informing him of the charge, and we hold that appellant waived the privilege of being arraigned. *Gouker v. State, supra.*

Appellant's second contention is without merit.

### III

Appellant contends that the trial court erred in refusing to provide appellant with a transcript of argument of counsel.

The record discloses that at the hearing before the lower court on a remand for further proceedings, appellant was unable to point out to the court what matters in the opening statements or closing arguments he considered significant, and the lower court found that since no objections were made by the

appellant during opening statements or closing arguments to anything stated therein by the State or by his own attorney, appellant effectively abandoned his request that the opening statements and closing arguments in this case be transcribed.

On appeal, appellant does not contend that the arguments of counsel were improper or prejudicial to him, but argues that his appellant counsel should have the right to review the entire record in search of possible errors in his conviction.

We find no merit in appellant's contention. Arguments of counsel do not ordinarily raise questions on appeal and are not normally transcribed. This Court has held that a transcript need not be furnished without a showing of how it could serve a useful purpose. *Brown v. State,* 1 Md. App. 571, 578, 232 A. 2d 261.

## IV

We know of no reason why the trial judge should provide appellant with a copy of the notes made by him during the trial of the case, and such a request was properly denied. Notes made by the trial judge during the course of the trial are his own and form no part of the record and are not available to the appellant.

## V

Appellant next complains that he was denied due process of law and his right to a fair and impartial trial by the manner in which the State conducted a lineup in the courtroom prior to trial.

We find no unfairness in the conduct of the lineup which was arranged by the assistant State's attorney and the attorney for the defendant with the acquiescence of the appellant-defendant and with the consent of the court. Approximately 24 persons, consisting of 17 Negro males, 5 white males and two white females, were seated in the first three rows of the courtroom. Appellant was seated in the second row with his brief-case on his lap. The first witness, Sam Pellerito, when brought into the courtroom, was asked by the State to see if he could pick out the man that robbed him. The trial judge then said: "Mr. Pellerito, we will tell you he is in these three rows of gentlemen here. See if you can pick out which one he is."

Whereupon the witness immediately identified the appellant and pointed him out to the court.

Appellant argues that the trial judge's instructions to the witness were prejudicial to him, in that the witness then knew the guilty party was in that group. While we do not approve of the court's statement, on the peculiar facts of this case we do not think it constituted reversible error. We point out that there was nothing of particular note which would distinguish appellant from the others in the large group in which he was seated and appellant's counsel stated, at the conclusion of the courtroom lineup, that he was satisfied with it. Moreover, the next witness, Nicholas Mancini, was unable to identify the appellant, although the trial judge repeated his remarks.

His further complaint that his counsel, in a previous case, urged him to keep his briefcase in his lap during identification influenced his identification is without merit. The witness had no knowledge that appellant possessed a briefcase. Also appellant insisted on carrying his briefcase with him, although told by the United States Marshal to leave it behind when he took his seat with the group.

An extrajudicial identification of a defendant is admissible if made under circumstances which would establish its fairness, integrity and reliability, as was the case here. *Bean v. State,* 234 Md. 432, 199 A. 2d 773; *Johnson v. State,* 237 Md. 283, 206 A. 2d 138.

## VI

Appellant contends that he was denied his Sixth Amendment right to compulsory process for witnesses by the failure of the trial court to subpoena witnesses for the defense.

The trial began at 4:33 p.m. on March 9, 1967. A jury was selected, composed largely of talesmen summoned by the court just prior to trial. After the jury had been sworn, the court declared a short recess. At this point in time, the appellant informed the court that he wished to summons nine witnesses, all of whom were non-residents of Maryland. The witnesses whose names he gave the court were District of Columbia officials and police officers, two District of Columbia lawyers, a bail bondsman, two Federal prisoners, and the Chief of Police for Arlington County, Virginia.

The trial judge questioned appellant closely as to what testimony he expected from these witnesses. The appellant was unable to say what they would testify to other than that John Shorter, a District of Columbia attorney, and Mickey Lewis, a bondsman, would be alibi witnesses to prove he was in their presence at or about the time of the robbery. On being questioned, his attorney advised the court that he had talked with both of these witnesses and from what he learned from each, their testimony would be of no value to appellant in establishing an alibi and for that reason he had made no attempt to summons either of them. Appellant stated that most of the witnesses he wished summoned would prove a conspiracy on the part of District of Columbia officials to get him off the street and have him convicted in Maryland.

The trial judge, after hearing from the appellant and his attorney, concluded that none of the witnesses, if they appeared, could be of any assistance to appellant in his defense. The trial judge therefore treated the request for witnesses as a motion for a continuance and denied the motion. Appellant then filed a formal motion for a continuance and a motion to move the case to the Federal Court, both of which were denied.

In our opinion, the lower court acted properly. It is apparent from the record, that the appellant sought only to delay the proceedings. Although over a four months period appellant had the opportunity to furnish his attorney with the names of any witnesses he wished to be summoned, he never did so. It was only on a visit to the D. C. Penal Institute in Lorton, Virginia, by his attorney, a week before trial, that his attorney learned of the names of John Shorter and Mickey Lewis. His attorney immediately contacted these two witnesses and satisfied himself that they would be of no benefit to appellant in establishing an alibi if they testified in his behalf. The granting of a continuance is within the discretion of the lower court. *Johnson v. State, supra.* We find no merit in appellant's sixth contention.

## VII

Appellant next contends that the conduct of the assistant State's attorney, in speaking with a defense witness while sequestered and soliciting from her material for impeachment,

constituted such improper and reversible action as to demand reversal.

The record discloses that while the witnesses were sequestered in the hall of the courthouse, the assistant State's Attorney talked with Barbara Robinson, a defense witness, prior to her taking the witness stand. He asked if she had a record, to which she replied that she did. He then asked her "what record?" Counsel for appellant, who was then present, told her not to answer. The assistant State's attorney already had her record, but wished to confirm it.

The trial judge ruled that there was nothing improper in the assistant State's attorney talking with the defense witness, while sequestered, to learn if she was the same party who had a record, and he permitted the assistant State's attorney to question the witness when she took the witness stand as to her criminal record for the purpose of impeachment.

We find nothing improper in what occurred in this instance. The assistant State's attorney did not coach the witness, but obtained from her information which was easily obtainable from other sources or upon the witness stand. The purpose of sequestration of witnesses is to prevent them from being taught or prompted by each others testimony. Wigmore on Evidence, Vol. 6, § 1838, p. 352; *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433; *State Roads v. Creswell,* 235 Md. 220, 201 A. 2d 328.

## VIII

Appellant next complains that the verdict of the jury was contrary to and against the weight of the evidence, in that the appellant was not sufficiently identified as the perpetrator of the offense.

In a jury trial, this Court does not inquire into and measure the weight of the evidence, but determines only if there is any relevant evidence to sustain the conviction. *Quinn v. State,* 1 Md. App. 373, 230 A. 2d 368; *Cobb v. State,* 2 Md. App. 230, 234 A. 2d 155.

The State produced two witnesses at the trial, one of whom, Sam Pellerito, positively identified the appellant as one of the men who robbed Sam's Car Wash. The record reveals that the witness had seen the appellant at the car wash on several oc-

casions prior to the robbery. Also, during the robbery, the witness had an excellent opportunity to view the appellant, since appellant had removed the handkerchief from his face when he reached in and robbed the safe. The record further shows that this witness identified appellant from photographs shown him the day after the robbery, had no hesitation in picking him out of the pretrial lineup, and was positive in his testimony in court that the appellant was the man who robbed and assaulted him and cleaned out the safe.

On cross examination, appellant attempted to show that because the witness testified that appellant was clean shaven and, later, said he had a small mustache, he was mistaken in his identification. This was clarified by the witness in his testimony when he reiterated that his face was clean shaven, but he had a mustache. However, this, and other small contradictions in his testimony, would go to the weight of the evidence and were for the jury to decide.

Appellant produced his mother and girl friend as witnesses in his behalf to establish an alibi. These witnesses testified that appellant was with them in Washington, D. C. at the time of the robbery. It is apparent from the verdict that the jury believed the State's witness and not those of the appellant. The matter of credibility of witnesses is one for the trier of facts to determine. *Hutchinson v. State*, 1 Md. App. 362, 367, 230 A. 2d 352. Here, we have a positive identification of the appellant made by the victim. A victim's positive identification alone, if believed, is sufficient to sustain a conviction. *Hutchinson v. State, supra; Reed v. State*, 1 Md. App. 662, 232 A. 2d 550; *Jones v. State*, 2 Md. App. 371, 234 A. 2d 614.

We find that there was sufficient evidence to submit the case to the jury and appellant's contention is without merit.

## IX

Appellant's ninth contention is that his conviction under the fifth count of the indictment (assault and battery) merged into his conviction under the first count (robbery with a deadly weapon) since assault is specifically named in count one of the indictment as being an element of that offense.

Appellant was convicted of robbery with a deadly weapon and assault and battery. While assault is an essential ingredi-

ent of armed robbery, the battery is not. The record discloses that the victim, Sam Pellerito, was knocked to the floor, forced to open the safe at gunpoint, and physically beaten by the appellant. There was therefore no merger of the assault and battery conviction into the armed robbery conviction. *Cottrell v. State,* 1 Md. App. 520, 522, 231 A. 2d 919.

### X

Appellant's final contention is that his twenty year sentence for assault and battery constitutes cruel and unusual punishment and should not stand. We find no merit in this contention. Assault and battery is a common law crime for which no statutory limit governing punishment is prescribed, and the determination of the length of sentence is left to the discretion of the trial court. Sentences for twenty years have been upheld against similar constitutional attack. *Roberts v. Warden,* 242 Md. 459, 219 A. 2d 254; *Adair v. State,* 231 Md. 255, 189 A. 2d 618. The record discloses that in addition to being robbed at gunpoint, the victims were severely pistol-whipped and beaten. Moreover, the twenty year sentence for assault and battery is to run concurrently with the twenty year sentence imposed for armed robbery.

*Judgments affirmed.*