548 A.2d 165

**Elmer Maurice SNOWDEN**

v.

**STATE of Maryland.**

**No. 1325, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 10, 1988.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Patricia Storch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Warren B. Duckett, Jr., State's Atty. for Anne Arundel County and Ronald M. Naditch, Asst. State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before MOYLAN, ALPERT and KARWACKI, JJ.

ALPERT, Judge.

Elmer Maurice Snowden, the appellant, was convicted in a court trial in the Circuit Court for Anne Arundel County

(Lerner, J.), of first degree murder, armed robbery, and assault and battery. He was sentenced to consecutive terms of life for the murder conviction and twenty years each on the remaining convictions to run consecutively to any sentence then being served. On appeal, the appellant contends that:

1. The court erred in denying his motion to suppress, and

2. His convictions for assault and battery should have merged into the conviction for armed robbery.

According to the record, on Sunday, March 2, 1986, near midnight, the appellant and another man approached Romano's Restaurant in Anne Arundel County, intending to rob the restaurant. Two employees opened a back door to take trash out to a dumpster, and the appellant and an accomplice entered the restaurant's kitchen. One employee, Arthur Ernest Bucklew, struggled with the appellant in an effort to obtain a rifle that the appellant was carrying. During the struggle, Bucklew was shot and killed.

The appellant and the other assailant proceeded into an office in back of the restaurant where the manager, Framouzis Stanidis, appeared. The appellant shot Mr. Stanidis in the arm. Subsequently, appellant and the other assailant demanded and were given money by Mr. Stanidis. Then, they left the restaurant.

## I. *Motion to Suppress*

Appellant contends that the court erred in denying his motion to suppress his statement to the police during a custodial interrogation. He argues that his request for a lawyer was ignored and that his statement was not voluntary. Appellant points to his young age (17) and weakened physical condition from being in custody, as well as alleged police misconduct as evidence of the involuntariness of his statement.

At the suppression hearing, the testimony of two police officers contradicted appellant's complaints.

The test to determine whether a statement obtained from a juvenile was voluntary and admissible is an inquiry into the totality of the circumstances. *McIntyre v. State,* 309 Md. 607, 526 A.2d 30 (1987). The trial court, after hearing extensive testimony, concluded that appellant was not coerced. The court determined that the appellant was intelligent and understood what was going on. The court noted that the appellant had been fed two meals, given an opportunity to sleep, and permitted to make phone calls. The trial court found that the statement was voluntary and denied the motion to suppress. Our independent review of the record confirms the fact that the appellant was aware of his rights and did freely and voluntarily make the statement. Hence, it was admissible. *Hoey v. State,* 311 Md. 473, 536 A.2d 622 (1988).

## II. *Merger*
### A. *The Required Evidence Test*

Appellant contends that his convictions for assault and battery should have been merged into his conviction for armed robbery. We do not agree. The test to determine whether two offenses merge is "the required evidence test"; *i.e.,* whether each offense requires proof of a fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979). Armed robbery requires the use of a weapon; battery does not. Common law assault and battery requires a completed unlawful application of force to the person of the victim; armed robbery requires a taking *from* a person "by force, violence or placing in fear," but the application of force to the body of the victim (*i.e.,* the battery) is not a requisite. *See* R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure,* Chapter 12; *Anderson v. State,* 61 Md. App. 436, 440, 487 A.2d 294, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). As this court explained in *Wilkins v. State,* 5 Md.App. 8, 21-22, 245 A.2d 80 (1968), assault is an essential ingredient of armed robbery, but battery is not.

*See also Loud v. State*, 63 Md.App. 702, 493 A.2d 1092 (1985), where we held that convictions for robbery with a deadly weapon and assault with intent to murder did not merge.

But our discussion cannot end here. The Court of Appeals recently recognized that statutory crimes expressed in the disjunctive require an additional step of analysis. Judge Adkins, speaking for the Court, explained:

> [T]he court must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would.

*Nightingale and Myers v. State*, 312 Md. 699, 706–707, 542 A.2d 373 (1988) (citing *Pandelli v. United States*, 635 F.2d 533, 537 (6th Cir.1980)). The Court concluded:

> If, when we look at the applicable alternative elements, a lesser offense in effect becomes one of the elements of another offense, the *Blockburger* test is met. It is met because, by virtue of that fact, all the elements of the lesser offense must be established to prove the other; only the other offense has any additional elements.

*Id.* at 707, 542 A.2d 373.

By analogy, when, as here, an offense such as common law robbery (with a deadly weapon) includes alternate elements such as (1) force or (2) the threat of force to the person of the victim, we should abandon, for analytical purposes, the elements that do not apply. Here, the threat of force does not apply with respect to the act of shooting; the shooting being clearly the case of force to the person of the victim. Thus, when considering the one remaining element, "force," it would, at first blush, appear the "force"

(the battery) is merely an element of robbery (consequently armed robbery) and that the *Blockburger* test is met. At this juncture, we must distinguish the case at bar from cases like *Nightingale & Myers.* There the lesser offense was in furtherance of (or inclusive in) the greater. Here it was not, according to the implicit finding of the trial judge.[1] Where, as here, the battery may or may not have been necessary to or in furtherance of the armed robbery, we defer to the trial judge for determination. He obviously determined that the battery was not in furtherance of the armed robbery. Under the facts, *sub judice,* he was not clearly erroneous.

B. *The Rule of Lenity*

In *Walker v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982), we noted that there are nevertheless times when two crimes arising out of a single act will not be punished separately. As Judge Moylan explained:

> It is purely a question of reading legislative intent. If the Legislature intended two crimes arising out of a

---

1. For example, in *Wilkins, supra,* we noted that:
   The record discloses that the victim, Sam Pellerito, was knocked to the floor, forced to open the safe at gunpoint, and physically beaten by the appellant. There was, therefore, no merger of the assault and battery conviction into the armed robbery conviction.
   We find the law of our sister state, Pennsylvania, to be instructive: A robbery can be carried out by the infliction of serious injury, but it can also be accomplished by mere threats of force or simple assault.... The merger of aggravated assault and robbery in cases such as the one *sub judice* would act as an open invitation to violent assailants to compound the injuries they inflict and then escape liability for additional crimes under the guise that the crimes were all part of the same criminal act.... By making the infliction of bodily harm an element of robbery, the legislature could not have intended to prevent sentencing courts from directly punishing those who commit vicious prolonged assaults.
   *Commonwealth v. Taylor,* 362 Pa.Super. 408, 524 A.2d 942 (1987), *allocatur denied,* 516 Pa. 640, 533 A.2d 712. There, appellant entered victim's apartment, attacked her from behind by pulling a cord around her, and when she became unconscious, appellant stabbed her several times. He then took jewelry and a camera box from the apartment.

single act to be punished separately, we defer to that legislated choice. *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bremer v. State,* 18 Md.App. 291, 343–345, 307 A.2d 503 (1973). If the Legislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the Legislature intended, we turn to the so-called "Rule of Lenity," by which we give the defendant the benefit of the doubt. *Simpson v. United States,* 435 U.S. 6, 13–16, 98 S.Ct. 909, [913–914] 55 L.Ed.2d 70 (1978); *United States v. Gaddis,* 424 U.S. 544, 547–548, 96 S.Ct. 1023, [1025–1026] 47 L.Ed.2d 222 (1976); *Ladner v. United States,* 358 U.S. 169, 173–178, 79 S.Ct. 209, [211–214] 3 L.Ed.2d 199 (1958); *Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403, [406] 1 L.Ed.2d 370 (1957); *Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, [622] 99 L.Ed. 905 (1955).

*Id.* at 201, 452 A.2d 1234.

If the subject offenses were statutory in origin, which they are not, it would be reasonable to assume that the Legislature intended more than one punishment. Battery is not always necessary to the commission of robbery with a deadly weapon and, therefore, need not be subsumed within that offense. If, as in the case *sub judice,* the commission of the battery inflicts an additional injury upon the victim for a purpose not necessarily in furtherance of the robbery, it may warrant separate and additional punishment.

█ The record in the case *sub judice* discloses that the appellant shot Mr. Stanidis on sight. Stanidis and another employee were then ordered to lay face down on the floor. At trial, Stanidis described the events that followed:

After I—he laid me—told me to lay down and told also Michael to lay down, he asked me where my gun was and he was keep repeating on where's your gun, where's your gun, and pointing with his gun to my back, and I say I don't have a gun. And he keep on insisting where my gun was, so I said I don't have a gun and then Michael

said to me, Saki, give him a gun if you have one. I said Michael, you know I don't have a gun, and then he asked me where the money was.

So he says, where's the money, I say it's on the desk. He says give me the money, he's keep on hollering, give me the money, I say the money's on the desk and then he told me to get up and give him the money. So I got up and I went into the other office which is connected with the first office ... where I had the money out, so I walk into the second office and then when I notice the second person came in, and as I reach over to get the money this other guy came up and got the money from my hand.

It is clear that although the battery—the shooting of Mr. Stanidis—occurred during the perpetration of an armed robbery, it was not essential to effectuate the robbery. Thus, the rifle was used not only to accomplish the armed robbery, but also to shoot Mr. Stanidis. Although there was only one event, two crimes were committed. *See Whitehead v. State*, 144 Ga.App. 836, 242 S.E.2d 754 (1978). Therefore, we hold the offenses do not merge and the "Rule of Lenity" does not apply. *See Wilkins, supra, Davis v. State*, 4 Md.App. 492, 243 A.2d 616 (1968); *Cottrell v. State*, 1 Md.App. 520, 231 A.2d 919 (1967).

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

MOYLAN, J., concurring and dissenting.

I concur in the decision of the Court upholding the trial judge's ruling not to suppress the physical evidence. I concur in the decision of the Court to affirm the convictions for first-degree murder and for armed robbery. I respectfully dissent, however, with respect to the Court's holding that the battery did not merge into the armed robbery.

### The Linguistic Problem

In articulating the reasons for this dissent, it is initially important that the majority opinion and the dissent speak

the same language, lest we compare "apples with oranges." Along with a significant part of the legal community, my linguistic preference is to use the word "assault" and the fuller phrase "assault and battery" (hereinafter, simply "assault") interchangeably. To me, moreover, assault is an umbrella crime that embraces what can be differentiated into three different through closely related sub-forms of prohibited behavior:

1. An actual battery;

2. An attempted battery; and

3. The intentional placing of another in apprehension of an imminent battery (this particular form of assault was originally a tort concept that entered the criminal law at a relatively late date).

See generally R. Perkins & R. Boyce, *Criminal Law* (3d ed. 1982) 151–179; W. LaFave & A. Scott, *Criminal Law* (2d ed. 1986) 684–696. The word, thus employed, does not connote something less than a consummated battery, a mere incipient battery. Indeed, on 90% of the occasions it is used, it means an actual battery.

This, I think, is the prevailing usage both in court and out. The headline "Woman Assaulted in Alley" obviously does not refer to an attempted battery that failed. The Maryland Legislature, moreover, clearly had actual batteries in mind when it provided in Art. 27, § 11E for the crime of "assault on another inmate or on [a guard or other correctional employee];" in § 11F for the crime of "spousal assault;" in § 12 for the crimes of "assault with intent to rob, ... assault with intent to murder ... [and] assault with intent to commit a rape ... or a sexual offense;" and in § 12A for the permitted responsive activity after "witnessing a violent assault upon the person of another." In all of these situations, the Legislature clearly did not intend to provide only for attempted batteries and to leave the consummated batteries without statutory redress.

With equal legitimacy, however, the majority opinion has opted for the more specific linguistic usage. It uses the term "battery" to mean an actual and consummated offen-

sive touching of the victim and nothing less. "Assault," on the other hand, means something less than that.[1] For purposes of uniformity, this dissenting opinion will adopt that more particularized usage. The term "assault" will mean either the incipient crime of attempted battery or the erstwhile tort of placing the victim in fear of an imminent battery. So much for language.

### Which Legal Elements Are We Comparing

For present purposes, the only issue is whether the battery for which the appellant was convicted is necessarily a lesser included element within the robbery or not. The fact that the robbery is, in turn, included within the larger aggravated crime of robbery with a dangerous and deadly weapon is beside the point. The larger inclusive crime which is our point of departure is robbery.

Robbery, of course, is a compound larceny. It is a larceny from the person accomplished by 1) force (battery) or 2) threat of force (assault). That disjunctive characteristic means that two different combinations of legal elements may produce a robbery. It may be the larceny-battery combination. It may, alternatively, be the larceny-assault combination. As Judge Adkins recently pointed out for the Court of Appeals in *Nightingale v. State*, 312 Md. 699, 542 A.2d 373 (1988), when dealing with a "multi-purpose" crime

---

1. Regretfully, even the more particularized usage is only quasi-particularized. With respect to those forms of the crime which are less than an actual battery, it fails to distinguish linguistically between an attempted battery and the placing of the victim in fear of an imminent battery. Although not pertinent to this decision, this lack of differentiation leads on occasion to confusion. Thus, the accepted legal cliche that there may not be an attempted assault is sometimes true and sometimes false. It is true with reference to the attempted battery form of assault because there may not be an attempt at an attempt. There may not be, therefore, an "attempted attempted battery." If, on the other hand, we are dealing with that form of assault which is the intentional placing of the victim in fear of an imminent battery, that is not an inchoate or incipient crime at all. With respect to it, there is no general principle of law that would preclude the prosecution for its attempt any more than for its consummation.

such as this, a crime that may consist of different combinations of legal elements, we do not even begin the comparing process of deciding whether each contains an element not included in the other until we first select the combination of elements that we are dealing with in the context of that particular case. As Judge Eldridge recently pointed out in *State v. Ferrell,* 313 Md. 291, 298, 545 A.2d 653 (1988):

"Moreover, as discussed recently by Judge Adkins for the Court in *Nightingale v. State, supra,* 312 Md. at 705, 542 A.2d 373, when a common law offense or a criminal statute is multi-purpose, embracing different matters in the disjunctive, a court in applying the required evidence test must examine 'the alternative elements relevant to the case at hand.'"

In *Vogel v. State,* 76 Md.App. 56, 61–62, 543 A.2d 398 (1988), we ourselves discussed the difference between shifting evidentiary facts to prove the same legal element and shifting legal elements within a multi-purpose crime:

"A critical distinction must be made between 1) the choice of elements to pinpoint the particular form of a crime that comes in various forms and 2) the choice of evidence to prove a given element of a crime. The former choice does not involve the *Blockburger* test; it is a choice that has to be made before the *Blockburger* test is even applied. The latter choice does.involve *Blockburger* and requires us to distinguish between 'required evidence' and 'actual evidence.' The distinction between 'required evidence' and 'actual evidence' is conceptually an elusive one and can probably best be pinned down by the use of example. When considering, for instance, the possible merger of 1) simple assault into 2) assault with intent to murder, every element necessary to prove simple assault is also a required element for proving assault with intent to murder. Simple assault is, therefore, a lesser included crime which is merged or subsumed into the greater inclusive crime of assault with intent to murder. The same relationship holds true with respect to robbery and its necessarily included larceny and with respect to a

consummated burglary and its necessarily included attempted burglary. Thus, assault is a 'required element' of or 'required evidence' of assault with intent to murder; larceny is a 'required element' of or 'required evidence' of robbery."

We went on, at 76 Md.App. 62–63, 543 A.2d 398:

"A source of inevitable confusion is that with respect to some crimes, although by no means all crimes, there is a shift or variation with respect to legal elements. We tend uncritically to equate one shift with another. The necessary shifting or selection of elements within a multiform crime, however, is by no means the same as a shift or variation with respect to the evidence by which to prove an unshifting legal element. Although there are present the deceptive common denominators of movement and choice and variation, all shifts within the course of a criminal prosecution are not legally the same. Some crimes are what Judge Adkins referred to in *Nightingale and Myers v. State, supra,* as 'multi-purpose' crimes. What is involved is more than different ways of doing the same thing. That is a matter of fact. It is rather the case that even fundamentally different things may nonetheless constitute the same crime. That is a matter of law. When a criminal offense comes in several different kinds, one does not even begin to catalogue the required elements until one has selected the kind of the offense applicable in a given case. 'When a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand.' *Id.*"

In handling a multi-purpose crime such as robbery, we follow the guidelines explicitly set forth in *Nightingale v. State, supra,* at 312 Md. 706–707, 542 A.2d 373:

"When, as here, a multi-purpose criminal statute is involved, the court:

'must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other

words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would.'
*Pandelli v. United States*, 635 F.2d 533, 537 (6th Cir. 1980)."

Applying those guidelines and putting together the package of pertinent legal elements for this case, what we have is a robbery of the larceny-battery variety. There was no assault (in the limited sense of that word). There was no assault of the "incipient battery" or "attempted battery that failed" variety. Neither was there an assault of the "placing in fear of an imminent battery" variety. The victim in this case, a store manager, was in his office at the cash register counting the day's receipts when he heard a disturbance in the adjacent kitchen, where his employee was already under attack. As the victim walked into the kitchen, he saw his employee and, right behind the employee, the appellant coming at him with a rifle. He immediately heard a shot and felt a bullet enter his left arm. He was ordered by the appellant to lie on the floor. The appellant, fearful that the store manager had a gun, demanded to know where his gun was. Once reassured that the manager had no gun, the appellant ordered him to stand up and produce the money. The appellant, along with an accomplice, grabbed $3,000 from the victim and left.

As the majority opinion seems to agree, the evidence demonstrated a single battery and no independent assault. By some reading of the facts that eludes me, the majority suggests that merger is not mandated because of the implicit finding of the trial judge that the battery was not in furtherance of the robbery. Although I can conceive of no other sane purpose for which the appellant would have walked into a store and shot the manager other than to

incapacitate him because the appellant feared he had a gun, I will make the assumption that the battery was not in furtherance of the robbery. If that be the case, there was no robbery. What we would be left with would be a mere larceny and an unrelated battery. The only thing that can aggravate or compound a larceny upward into a robbery is that, for this particular form of robbery, the larceny is accomplished by a battery. If the battery, therefore, were unrelated to the larceny rather than in furtherance of it, there would be, by definition, no robbery. The legitimacy of the robbery conviction compels the merger; non-merger would dictate a reversal of that conviction.

### *The Pleading Problem*

If the majority opinion is somehow suggesting that there was not one battery but two, one battery that was a necessary ingredient of the robbery and merged and another unrelated battery that did not merge, then there is an obvious deficiency in the pleadings. This multi-count indictment included a single battery count, not two such counts.

The configuration of the multi-count indictment makes it apparent that the two flagship charges were assault with intent to murder and robbery with a deadly weapon. The counts pyramided downward so as to include all lesser included offenses subsumed within the greater charges. In such a pleading configuration, it is inconceivable that the single battery count is not the battery which is part of a robbery but is, instead, some other unrelated battery. If that were the case and if for some reason (such as the failure of the thieves to find any money) the consummated robbery charge should fail, would the majority suggest that there could be no conviction for the lesser included battery because the only battery count in the indictment referred to some other and unrelated battery? If, in the alternative, the facts would support a finding of two separate batteries, one as part of the robbery and one unrelated, would the

majority opinion suggest that a single count could support two convictions and two separate sentences?

If the facts could somehow support a finding that there was a battery in this case unrelated to the robbery (and I suggest that they could not), the short answer is that such an unrelated battery was never charged. If a single battery count could somehow support either of two separate batteries but not both, then we would have vagueness problems and double jeopardy problems that are mind-boggling.

Where a prefabricated, multi-count indictment pyramids downward, the ultimate merger issue is frequently resolved by the charging document itself. If *Wilkins v. State*, 5 Md.App. 8, 245 A.2d 80 (1968) suggests anything to the contrary, *Wilkins* is simply wrong.

### Atom–Smashing Not Permitted

Once we have isolated a legal element, for merger purposes that element is, as we once thought the atom to be, indivisible. If the majority opinion is somehow suggesting that there was a single battery in this case but that because the battery employed a greater degree of force than was necessary to accomplish the robbery, that part of the battery which is excessive in degree does not merge, that would be to attempt to divide the indivisible. A legal element, notwithstanding that it may be measurable in degrees of force or other social harm, rises or falls, for merger purposes, as a unit. It cannot be maintained that a necessary minimum amount of a legal element must merge but that any degree or amount above that minimum does not merge.

By any theory that I can conceive of, there is no way that in this case the shooting of the store manager by the robber was not part of the robbery, no way that in this case the battery did not merge into the robbery.