583 A.2d 1056

**Elmer Maurice SNOWDEN**

v.

**STATE of Maryland.**

**No. 117, Sept. Term, 1988.**

Court of Appeals of Maryland.

Jan. 14, 1991.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, José Felipé Anderson, Asst. Public Defender, all on brief), Baltimore, for petitioner.

Beverly Peyton Griffith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY and McAULIFFE, JJ., and COLE,** ADKINS * and BLACKWELL * (retired), Court of Appeals Judges, Specially Assigned.

COLE, Judge.

In this case we must determine whether separate convictions for assault and battery and robbery with a dangerous and deadly weapon of one victim arising out of the events of one evening are proper, or whether the lesser offense of assault and battery merges into the greater robbery offense.

The Petitioner, Elmer Maurice Snowden, was convicted in the Circuit Court for Anne Arundel County of first degree murder,[1] robbery with a dangerous and deadly weapon, and assault and battery for an incident that occurred on March 2, 1986. On that night, Snowden and an accomplice approached the Romano's Restaurant in Glen Burnie with the intent to steal. One of the restaurant employees, Pete

---

** Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

* Blackwell, J., and Adkins, J., now retired, participated in the hearing and conference of this case while active members of this Court; but did not participate in the decision and adoption of this opinion.

1. Snowden does not dispute the conviction of and sentence for murder; that issue is not before us.

Bucklew, opened the back door to take the trash to the dumpster, and Snowden entered through the open door, holding Bucklew and Michael Generette, another employee, at gunpoint. Bucklew struggled for the gun and was shot and killed. Upon hearing noises in the kitchen, the restaurant manager, Framouzis Stamidis, came from the office to the kitchen where he was immediately shot in the left arm by Snowden. Stamidis and Generette were then told to lie down on the floor. Snowden, while pointing his rifle at the two men, asked repeatedly where Stamidis' gun was, but after several denials by Stamidis of the existence of a gun in the restaurant, Snowden ordered Stamidis to take him to the money. Still at gunpoint, Stamidis led Snowden to the office where the money was located, and Snowden and his accomplice then left with $3000 taken from the restaurant. Snowden was apprehended several days later.

Snowden does not contest his conviction for the murder of Bucklew. He argues, however, that the separate conviction for assault and battery of Stamidis should have been merged into the greater offense of armed robbery. Snowden contends that the two offenses arose from the same transaction and that all of the elements of assault and battery that occurred here were also required to prove the robbery. Therefore, he argues, the lesser offense should merge into the greater.

The State counters by stating that there were in fact two separate crimes perpetrated against Stamidis, one being the shooting (battery) as soon as Stamidis approached the kitchen (before the robbery began) and the other being the robbery itself with the requisite element of force or threat of force provided by the rifle constantly pointed at Stamidis' back while Snowden demanded money. The State also avers that separate convictions for two offenses are proper if the lesser offense is not essential to effectuate the greater offense. The State reasons that an assault (a threat of force) can support a robbery conviction and that a battery (a harmful or offensive touching) is not necessary to effectuate a robbery. Therefore, separate convictions

for battery and robbery of one victim during one criminal episode can coexist.

The judgment of the trial court was affirmed by the Court of Special Appeals. *Snowden v. State,* 76 Md.App. 738, 548 A.2d 165 (1988). We granted certiorari to decide the important issue of whether the offenses should merge.

 This Court has made clear that under both federal double jeopardy principles and Maryland merger law, the usual test for determining whether two offenses are the same is the required evidence test. *White v. State,* 318 Md. 740, 569 A.2d 1271 (1990); *State v. Ferrell,* 313 Md. 291, 545 A.2d 653 (1988); *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988); *Dillsworth v. State,* 308 Md. 354, 519 A.2d 1269 (1987); *State v. Jenkins,* 307 Md. 501, 515 A.2d 465 (1986); *Whack v. State,* 288 Md. 137, 416 A.2d 265 (1980); *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979); *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977). The required evidence test is often labelled the *Blockburger* test based on the Supreme Court's holding and analysis in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[2]

In *Blockburger,* the Petitioner was convicted of three counts of illegal sale of morphine hydrochloride to the same purchaser on two different days. The third count of the indictment charged a sale of the drug not from the original stamped package in contravention of the then prevailing Harrison Narcotic Act; the fifth count charged that the same sale was not made pursuant to a written order of the purchaser as required by another provision of the Harrison Act. One of the Petitioner's principal contentions was that the sale charged in the third count constituted the same sale that was the basis for the fifth count, and therefore that

---

**2.** The test is referred to as the Blockburger test although the test was actually first adopted by the Supreme Court in *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). For a further discussion of the history of the required evidence test, *see Thomas v. State,* 277 Md. 257, 262–67, 353 A.2d 240 (1976).

sale should only have amounted to one offense with a single penalty. *Id.* at 301, 52 S.Ct. at 181. The Supreme Court did not agree. The Court held that a single act may be an offense against two statutes, and if each statute requires proof of a fact which the other does not, there are two separate offenses. *Id.* at 304, 52 S.Ct. at 182. In *Blockburger*, each statute required proof of different elements of the illegal sale of narcotics, and as such two offenses were committed. *Id.*

■■■ Although *Blockburger* involved statutory offenses, as stated above, the required evidence test is also the applicable standard under the common law Maryland merger doctrine. The required evidence test "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *State v. Jenkins*, 307 Md. at 517, 515 A.2d 465. If the offenses merge and are thus deemed to be one crime, separate sentences for each offense are prohibited. *Newton v. State*, 280 Md. at 268, 373 A.2d 262. What we are called upon to do, then, is scrutinize the elements of robbery and assault and battery to determine whether all the elements of assault and battery were relied upon to find a robbery. If so, and the offenses occurred during one criminal act, Snowden's two convictions on those charges cannot stand.

■■■ Assault has been defined as either "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." *Dixon v. State*, 302 Md. 447, 457, 488 A.2d 962 (1985), quoting *Perkins on Criminal Law* 114 (2d ed. 1969). Battery, another common law offense, is the unlawful application of force to the person of another. "Robbery" is also a common law crime and refers to the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear.

*West v. State,* 312 Md. 197, 202, 539 A.2d 231 (1988); *Williams v. State,* 302 Md. 787, 792, 490 A.2d 1277 (1985).

■ Robbery is a compound larceny. It is a larceny from the person accomplished by either an assault (putting in fear) or a battery (violence). Therefore, either combination produces a robbery. When such a "multi-purpose" crime is involved, we refine it by examining the alternative elements relevant to the case at issue.

The State contends that the shooting was a separate act giving rise to a separate criminal offense. We assume, for the sake of argument, that the fact finder had a basis for concluding either that the shooting was a separate act or that it was part of the robbery. Here it did neither and we need not venture a guess as we believe the rationale applied in *Nightingale* dictates a clear result.

In *Nightingale,* we were faced with a similar situation. There the issue was whether separate convictions and sentences for both child abuse and sexual offenses were proper when the State relied upon and proved the sexual offense to sustain the child abuse conviction. According to the State, the abuse charge was not based on physical harm; the sex offenses themselves constituted the abuse. The judge instructed the jury on the elements of all the offenses, and the prosecutor told the jury that the abuse consisted of the sexual offenses. The Petitioner was convicted of both child abuse and the sexual offenses.

We held that under the circumstances, the jury could have found the defendant guilty of child abuse based solely on evidence of some sexual offense. If that were the case, then the sex offense would have become a lesser included offense of child abuse. The problem, however, was that we could not determine whether the general verdict of guilty of abuse was based on the sex offense as a lesser included offense or on other reasons. Therefore, we resolved the ambiguity in favor of the defendant and set aside the sex offense counts. *See, id.,* 312 Md. at 708–9, 542 A.2d 373.

■ We are faced with a similar ambiguity here. We do not know whether the robbery charged was based on battery as a lesser included offense or on assault as a lesser included offense with the battery considered separate. Snowden's was a court trial; had it been a jury trial we could have looked to the judge's instructions in hope of illuminating the rationale behind the verdicts. Because the case was tried by the court, we must look to the judge's rationale for the convictions. That rationale is not readily apparent to us, so, as in *Nightingale*, we are constrained to give the Petitioner the benefit of the doubt and merge his sentence for and conviction of assault and battery into those for the robbery charge. The fundamental principle of fairness in meting out punishment requires us to so hold. *See Monoker v. State*, 321 Md. 214, 582 A.2d 525 [1990].

■ Also, contrary to the view espoused by the Court of Special Appeals in this case, we note that it is of no moment that the act constituting the lesser included offense may involve more force than necessary to support the greater crime. The "extra" force is not severed from the greater crime merely because it goes beyond that amount needed to sustain a conviction. As Judge Moylan indicated in his dissent, "[i]t cannot be maintained that a necessary minimum amount of a legal element must merge but that any degree or amount above that minimum does not merge." *Snowden v. State*, 76 Md.App. at 752, 548 A.2d 165.

Therefore, under the circumstances of this case the two offenses merge.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO THE ASSAULT AND BATTERY CONVICTION. CASE REMANDED TO THAT COURT TO REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH DIRECTIONS TO THAT COURT TO MERGE THE CONVICTIONS AND SENTENCES FOR ASSAULT AND BATTERY AND ROBBERY WITH A DEADLY WEAPON.

ANNE ARUNDEL COUNTY TO PAY THE COSTS IN THE COURT OF SPECIAL APPEALS AND THIS COURT.

Concurring Opinion by McAULIFFE, J., in which MURPHY, C.J., joins.

McAULIFFE, Judge, concurring.

I concur in the judgment and the opinion. I write separately to express the view that the facts of this case clearly would have supported separate convictions.

The question presented by this case involves the applicability of the doctrine of merger when there are several different acts of force or threats of force directed to the victim of a robbery during the criminal event. The answer, which of necessity must depend upon the facts of each case, involves two principal considerations. First, is the conduct constituting the assault or battery for which the State seeks a separate conviction sufficiently separate from the conduct necessary to establish the "force or threat of force" element of robbery so that dual convictions offend neither a sense of basic fairness nor essential protections of the Double Jeopardy Clause? Second, does the record affirmatively show that the trier of fact, in finding the defendant guilty of robbery, did not in fact rely upon the conduct constituting the allegedly separate offense to satisfy the "force" element of the robbery?

With respect to the first question, this Court has said that:

separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in very close proximity to each other and even though they are part of a single criminal episode or transaction.

*State v. Boozer*, 304 Md. 98, 105, 497 A.2d 1129 (1985).

In a somewhat similar context, where the Court was concerned with legislative intent with respect to the proper unit of prosecution under a single statute, the Court explored the problem of separate offenses. *See Randall*

*Book Corp. v. State,* 316 Md. 315, 323–29, 558 A.2d 715 (1989). As was pointed out in *Randall Book,* the line is not always easy to draw. The Supreme Court has held that the simultaneous transporting of two females across a state line for immoral purposes may be punished only as a single offense, *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), but that the successive cutting of each of three mail bags on a single occasion within a single railway car may be punished as three separate offenses, *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). Two offenses may be committed by a single act, as where a person wielding a knife against two detectives may be punished for two assaults, *Cousins v. State,* 277 Md. 383, 397, 354 A.2d 825 (1976). Yet, a person unlawfully carrying a single handgun continually for a three-hour period, at different locations, may be punished only for a single possessory offense. *Webb v. State,* 311 Md. 610, 619, 536 A.2d 1161 (1988) (discussing "continuous offense" cases). And, as Lord Mansfield pointed out in *Crepps v. Durden,* 2 Cowper, 640, 98 Eng.Rep. 1283 (K.B.1777) when Parliament prohibited the exercise of one's ordinary trade upon the Lord's Day, it could not have intended that a baker receive four convictions for selling four small loaves of bread on the same Sabbath, or that a tailor might be separately punished for each stitch taken on a single Sabbath.

In the case of multiple assaults or batteries, the line is equally difficult to draw. Although these are common law crimes, and do not, therefore, involve legislative intent, it is appropriate in determining the propriety of cumulative punishments to employ the same basic standards of common sense and fairness that largely influence the outcome of legislative intent cases. Certainly, where one person pummels another with his fists for several minutes, the law would not countenance a separate punishment for each time a blow is landed. On the other hand, if one person were to inflict various types of torture upon another during the course of the day, allowing the victim to recover consciousness between each assault, it would seem appropriate to

permit separate convictions for the separate insults to the person of the victim. As the Supreme Court of Connecticut observed in approving separate convictions for separate sexual assaults upon a single victim occurring during a brief period of time, "each assault upon the victim involved a separate act of will on the part of the defendant and a separate indignity upon the victim." *State v. Frazier*, 185 Conn. 211, 440 A.2d 916 (1981), *cert. denied*, 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982).

In the case before the Court, the State argues there were at least two separate acts or courses of conduct on the part of the defendant that were independently sufficient to 1) establish the threat of force necessary to satisfy that element of the robbery offense, and 2) establish the required elements of a separate battery. The first of these separate acts involve the defendant shooting Stamidis in the arm when Stamidis came to investigate the noise caused by the confrontation between the defendant and Bucklew. Clearly, that shooting of Stamidis constituted a battery.

The second course of conduct by the defendant, alleged by the State to constitute a separate assault fully capable of supplying the "threat of force" element of the robbery, was the holding of Stamidis at gun point while the defendant extracted information from him concerning the location of the money, marched him to the office, and then took the money. This conduct constituted an assault sufficient to prove the threat of force required for the robbery conviction. Had the shooting of Stamidis never occurred, the proof of robbery would still have been complete. Thus, the State argues, the defendant's act of shooting Stamidis could have been completely disregarded by the trier of fact when the determination of the robbery charge was made, and under those circumstances the shooting was not a lesser included offense of the robbery, and was properly punished as a separate battery.

I agree with the State that under the particular circumstances of this case the shooting of Stamidis could properly have been the subject of a separate conviction and sentence.

I also agree, however, that the Court need not decide that issue, because the State is unable to demonstrate that the trier of fact, in this case the trial judge, did not rely upon the defendant's conduct in shooting Stamidis as evidence of the requisite force or threat of force in finding the defendant guilty of robbery. As noted above, the trial judge need not have relied upon that evidence. If he believed that the defendant held Stamidis at gun point thereafter, that conduct alone would suffice to prove the "force" element of the robbery. But, in the absence of an affirmative showing that this was the rationale employed by the trial judge, the Court cannot assume that it was. *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988); *State v. Frye,* 283 Md. 709, 393 A.2d 1372 (1978).

Chief Judge MURPHY has authorized me to state that he joins in this concurring opinion.