**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 00-4060

DONTE HAMMOND,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-99-73-HNM)

Submitted: July 31, 2000

Decided: August 11, 2000

Before WILLIAMS and MOTZ, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Vacated and remanded with instructions by unpublished per curiam
opinion.

_____

**COUNSEL**

James Wyda, Federal Public Defender, Elizabeth L. Pearl, Assistant
Federal Public Defender, Greenbelt, Maryland, for Appellant. Lynne
A. Battaglia, United States Attorney, Jane M. Erisman, Assistant
United States Attorney, Harvey Ellis Eisenberg, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donte Hammond appeals from his conviction for possession of a handgun by a convicted felon. According to police testimony, Officers Omar Wright and Jimmie Dease observed Hammond while on evening patrol of a residential area known for drug trafficking. Hammond was standing with a group of people who dispersed as Wright's patrol car drew near. When the group broke up, Hammond headed towards a nearby house and began to open the gate leading to the house. Wright, still in his car, called to Hammond through his opened car window and asked Hammond to identify himself and to state whether he lived at the house. Hammond replied,"no," reached for his waist area, and ran away. Wright left his car and gave pursuit, along with Dease, who was directly behind Hammond. Hammond kept his hands at his waist throughout the chase.

As Hammond entered an alley, Wright heard a clanging sound of metal hitting concrete. At about that same time, Dease shouted that Hammond had dropped a weapon. When Wright looked at the floor of the alley, he found and recovered a handgun. The officers eventually caught and arrested Hammond, and testified that they did not touch him prior to this time.

Hammond testified that as he was going through the gate, Wright asked him if he lived at the house, to which he replied no, explaining that he was going to see a friend. Wright then asked him to walk towards his patrol car. Hammond complied and Wright exited his vehicle. Hammond then testified that Wright grabbed him, whereupon Hammond "pushed [Wright] up," got free of his coat, which Wright was holding, and ran away.

Based on Hammond's version of events, the Defense moved to suppress the firearm, arguing that it was the fruit of an unlawful

2

arrest. Specifically, they asserted that Wright's alleged action in grabbing Hammond constituted an arrest and that there was no probable cause to support an arrest at that time. The district court agreed that there was no probable cause, but, without making a credibility determination or a finding of whether an arrest actually occurred, found that to the extent that there was an arrest, Hammond's action in dropping the gun revealed and constituted an intervening criminal act that provided probable cause for his arrest. It then concluded that the gun was admissible, denying Hammond's motion to suppress. Following a jury trial and conviction, Hammond noted a timely appeal to this Court.

The parties briefed three issues on appeal. First, they both discussed an issue left unresolved by the district court --- whether Wright, in allegedly grabbing Hammond, affected an arrest. Hammond argues that such an action constitutes an arrest under the Supreme Court's decision in California v. Hodari D., 499 U.S. 621 (1991). The Government, although denying that such an action occurred, argues that even if Wright did grab Hammond this action would not constitute an arrest because the force Wright allegedly used was insufficient to stop Hammond. This is not the standard by which an arrest is judged. Rather, the Supreme Court in Hodari D. cited with approval a commentary stating that

> [t]here can be constructive detention, which will constitute an arrest, although the party is never actually brought within the physical control of the party making an arrest. This is accomplished by merely touching, however slightly, the body of the accused, by the party making the arrest and for that purpose, although he does not succeed in stopping or holding him even for an instant; as where the bailiff had tried to arrest one who fought him off by a fork, the court said, "If the bailiff had touched him, that had been an arrest. . . ."

Id. at 625 (citations omitted). We find the Government's arguments to the contrary to be unpersuasive, and accordingly, we find that if Wright did, in fact, grab Hammond, an arrest occurred.

The parties next address the district court's determination that the firearm was admissible notwithstanding the possibility of an unlawful

3

arrest. This determination was based on this Court's decision in United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997), where we held that a defendant's intervening action in firing at the police following an unlawful stop constituted sufficient attenuation to remove the taint of the unlawful stop such that the firearm used was admissible notwithstanding the illegal stop. Hammond asserts that the holding in Sprinkle is inapposite to his case. We agree.

The rationale for admitting the firearm in Sprinkle was that Sprinkle's conduct constituted a new and distinct crime that was a sufficient intervening act so as to attenuate the taint from the improper police action. That is not the case in Hammond's appeal. Rather, Hammond's action simply revealed a crime he was already committing. In United States v. Bailey, 691 F.2d 1009 (11th Cir. 1982), cited with approval in Sprinkle, the Eleventh Circuit specifically distinguished the commission of a new crime from the act of abandonment at issue in the instant appeal, stating

> [u]nlike the situation where in response to the unlawful police action the defendant merely reveals a crime that already has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct.

Id. at 1017 (emphasis added).

We find that in dropping his weapon, Hammond was not committing a new crime which attenuated any taint from the alleged arrest, but was simply revealing a crime which he was already committing -- possessing a firearm after a felony conviction. Accordingly, we find that the district court's application of Sprinkle was erroneous.

The Government presents a final and alternative basis upon which to uphold the district court's ruling, stating that under Hammond's own version of events, Hammond "pushed [Wright] up" when Wright tried to grab him. Thus, the Government argues that even accepting

4

Hammond's story, he committed a new and separate crime -- assault -- sufficient to attenuate a previously improper arrest under Sprinkle.

Under Maryland law, the relevant definition of assault is the unlawful application of force to the person of another. See Snowden v. State, 583 A.2d 1056, 1059 (Md. 1991). "This type of assault requires proof that: (1) the defendant caused a harmful physical contact with the victim, (2) the contact was intentional, and (3) the contact was not legally justified." Cooper v. Maryland, 737 A.2d 613, 617 (Md. Ct. Spec. App. 1999) (emphasis added). Maryland law provides that an individual confronted with an unlawful, warrantless arrest may lawfully resist that arrest by resorting to reasonable force. See In re Jason Allen D., 733 A.2d 351, 369 (Md. Ct. Spec. App. 1999).

In ruling on Hammond's motion to suppress, the district court stated, "in the event either police officer had arrested the Defendant, Mr. Hammond, based on loitering, or based on running away, that stop would be illegal." (J.A. at 153.) Thus, if Officer Wright did grab Hammond, as Hammond asserts, Hammond would have had the right to resist that arrest through the use of reasonable force. Consequently, his action of "pushing Wright up" would have been legally justified. This action therefore cannot be an assault under Maryland law absent a showing that the amount of force applied was unreasonable. There is no such showing in the record. Therefore, contrary to the Government's assertion, Hammond's version of events does not demonstrate a new, intervening crime sufficient to attenuate the taint from the alleged improper arrest.

In light of the foregoing determinations, we remand for an additional suppression hearing at which the district court must make a finding of fact as to whether Wright actually grabbed Hammond. If the district court determines that no such contact occurred, then it will again decline to suppress the firearm and will decline to set aside its conviction. If, on the other hand, the court determines that such contact did occur, and no other theory of admission is found to exist, then the district court will enter an order suppressing the firearm, and vacate the conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED WITH INSTRUCTIONS

5