705 A.2d 322

**Eugene James THOMPSON**

v.

**STATE of MARYLAND.**

**No. 916, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 5, 1998.

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Leonard C. Collins, Jr., State's Atty. for Charles County, LaPlata, on the brief), for appellee.

Argued before MOYLAN, HARRELL and KENNEY, JJ.

MOYLAN, Judge.

The problem giving rise to this appeal is a small one, but a chronic and nagging one. What it involves is, to be sure, merely a peripheral aspect of a conviction for a larger offense, but it is nonetheless a problem that recurs with annoying

frequency. It is generally the result of a stubborn obstinacy on the part of the State in attempting to make a single assault conviction, in the context of a general verdict of guilty on a multi-count indictment, do double duty. The State frequently seeks to endow that single charge of assault with the chameleon-like capacity to allege first one crime and then, should the desire arise, a separate and distinct crime and potentially, therefore, two crimes at once.

The major non-lethal felonies involving violence against the person—robbery (armed or unarmed), rape (in either degree), and a sexual offense (in the first or second degree)—all include an assault as one of the constituent elements of the greater offense. A carefully drawn indictment for any of those major felonies, cautiously providing for any unexpected trial contingency, routinely includes a charge of assault among its entourage of lesser counts. When the conviction is had on the major charge, all convictions for its lesser included offenses are regularly subsumed (merged) into that for the greater offense. The problem arises when, as in this case, the State suddenly balks at the merger and insists that the assault count was not for the assault that was part of the robbery (or rape or sexual offense) at all, but was for a separate and unrelated assault that arguably occurred ten minutes before or twenty minutes after the major crime of violence.

To support its proposition that the assault conviction in issue should not merge, the State almost always points to the evidence, arguing, as it does in this case, that the evidence was legally sufficient to permit a finding of fact that a second assault occurred that was not a part of the major crime. Such evidence-based arguments, moreover, frequently enjoy at least a surface plausibility. Everyone gets immediately distracted by the evidentiary issue. The question of whether a follow-up blow, delivered five or ten minutes after the opening jab, is a fresh assault or a continuation of the original assault is a fine distinction over which Thomistic philosophers could wrangle interminably.

In an effort to lay this nagging and unnecessary problem to rest with some finality, we hold in this case that the resolution of the merger problem is to be found not in the state of the evidence but in the state of the pleadings. The pertinent question is not whether more than one assault was conceivably proved. It is whether more than one assault was actually charged and, if not, then which of several possible assaults was the only assault charged.

The appellant, Eugene James Thompson, was convicted by a Charles County jury of fourteen counts of a fifteen-count indictment. Two of the convictions, not here pertinent, were for 1) conspiracy and 2) the possession of a firearm by a convicted felon. The other thirteen counts, twelve of which were submitted to the jury, charged three sets of offenses committed against three respective victims. The flagship charges for each of those sets were: 1) the armed robbery of Lyray Simpson, 2) the attempted armed robbery of Clifton Linkins, and 3) the attempted armed robbery of Shannell Stewart. The first, and the more interesting, of the appellant's contentions is that his convictions for 1) the first-degree assault on and 2) the theft from Lyray Simpson should have merged into his conviction for the armed robbery of Lyray Simpson and that his conviction for the first-degree assault on Shannell Stewart should have merged into his conviction for the attempted armed robbery of Shannell Stewart.

Stewart was a drug dealer. On the evening of October 23, 1996, Stewart, Linkins, and Simpson were all spending the night at the trailer home of Yolanda Day. At a relatively late hour that evening, not further specified by the evidence, the appellant and his brother, Howard Thompson, entered the trailer and, at gunpoint, attempted to rob the three male occupants of the trailer. The appellant took from Simpson seven dollars in cash and Simpson's leather jacket. The other two would-be robbery victims, however, pulled out their pockets and revealed that they had nothing worth stealing. After approximately a ten-minute confrontation, the appellant and his brother left. That was the first confrontation between the appellant and his three victims. Simply as a linguistic conve-

nience, we will hereinafter refer to it as the "eleven o'clock incident." The fifteen-count indictment dealt, at least predominantly if not exclusively, with the "eleven o'clock incident."

The factual complication that gave rise to the present appellate problem is that the appellant got greedy and returned to the scene of the crime. Shortly after the appellant and his brother concluded the "eleven o'clock" robbery and left the trailer, the appellant, this time without his brother, returned to the trailer and, again at gunpoint, confronted the three victims for a second time. On that second occasion, the appellant robbed Lyray Simpson of an undesignated quantity of narcotic drugs. As on the first occasion, Linkins and Stewart had nothing worth taking.

The testimony varied as to the time that elapsed between the conclusion of the first confrontation and the initiation of the second. When asked about the length of time between the appellant's earlier departure and subsequent return, Simpson testified that he was "not sure but it wasn't long." On cross-examination, he acknowledged that in his earlier statement to the police he had said that the appellant had "come back ten minutes later and tried to rob us again." Stewart also recalled the time gap as "probably ten or fifteen minutes." Linkins, on the other hand, testified that the lapse of time between the appellant's departure and return was "like three or four minutes." At the other end of the spectrum, Yolanda Day, who owned the trailer and who witnessed both incidents, described the time that had elapsed as "like thirty minutes, thirty-five minutes."

The estimates thus range from three minutes to thirty-five minutes. Factually, a three-minute gap reduces the appellant's return to little more than a Parthian dart, an afterthought to make certain that any available narcotics were not left out of the night's booty. An unbroken thirty-five-minute gap, on the other hand, might well support a permitted inference of a separate and distinct criminal episode. Ten or fifteen-minute gaps would be more problematic. If we were looking at the state of the evidence to resolve this merger

issue, we would indulge the State with that version of the facts most favorable to it, to wit, a thirty-five-minute gap between the incidents. Simply as a second linguistic convenience, we will hereinafter refer to this subsequent encounter as the "eleven thirty incident."

*Arguendo*, we will agree with the State that the "eleven thirty incident" could factually be deemed to have been a criminal episode separate and distinct from the earlier "eleven o'clock incident." *Arguendo*, therefore, it could have given rise to an entire additional matrix of charges, replicating fourteen counts of the fifteen-count indictment already described. Only the conspiracy count could not have been replicated, for on the second occasion the appellant acted alone. The State's argument, pushed to the limits of its logic, should have produced a twenty-nine-count indictment. *Arguendo*, the evidence was legally sufficient to establish both an assault on and a theft (of narcotics) from Lyray Simpson as part of the "eleven thirty incident." *Arguendo*, the evidence was legally sufficient to establish an assault on Shannell Stewart as part of the "eleven thirty incident."

 All of the evidence, assumed for the sake of argument to be legally sufficient, gets the State nowhere, however, unless those separate offenses were clearly and distinctly charged as part of the Grand Jury indictment. It is our inescapable conclusion that in this case, they were not.

This brings us then to the state of the pleadings. The strategic configuration of the Grand Jury indictment is transparently clear. Counts fourteen and fifteen related to the "eleven o'clock incident" as a totality. Count fourteen charged the appellant with conspiring with his brother to commit robbery. Obviously this related to the "eleven o'clock incident," for only there was a second conspirator involved. Count fifteen charged the appellant with the unlawful possession of a firearm as a convicted felon.

The other thirteen counts grouped themselves into three sets of major and lesser included crimes committed against each of the three victims respectively. Counts one, two, and

three were the flagship counts, charging the appellant with 1) the armed robbery of Lyray Simpson, 2) the attempted armed robbery of Clifton Linkins, and 3) the attempted armed robbery of Shannell Stewart.

| LYRAY SIMPSON | CLIFTON LINKINS | SHANNELL STEWART |
|---|---|---|
| 1. | 2. | 3. |
| Armed Robbery | Attempted Armed Robbery | Attempted Armed Robbery |

There then followed under each of those three flagship counts, three descending ladders of lesser included (and in one instance lesser unincluded) charges. Because the attempted armed robberies were drawn under Art. 27, § 488, each of the three flagship counts was a felony. Under § 36B(d), therefore, the appellant was guilty of three separate instances of the Use of a Handgun in the Commission of a Felony. By statutory proviso, those charges, though arguably lesser included offenses, would not merge into their respective underlying felonies. Counts four, five, and six were the respective handgun counts.

| LYRAY SIMPSON | CLIFTON LINKINS | SHANNELL STEWART |
|---|---|---|
| 1. | 2. | 3. |
| Armed Robbery | Attempted Armed Robbery | Attempted Armed Robbery |
| 4. | 5. | 6. |
| Use of a Handgun | Use of a Handgun | Use of a Handgun |

In a carefully drawn indictment, one of the dangers that a prosecutor guards against is that a defense of voluntary intoxication (by virtue of drugs or alcohol) could succeed in showing that a defendant lacked the mental capacity to form a specific intent. Such a defense would be capable of negating guilt on the three flagship counts and, thereby, negating guilt on the three handgun counts by negating the underlying felonies. In such a situation, the State would fall back, with respect to each victim, on the lesser included offense of first-degree assault, a crime requiring only a general intent.[1]

---

1. To have covered the waterfront completely, the State should probably have added three counts of second-degree assault.

Counts seven, eight, and nine represented the State's fall-back position in that eventuality.

| LYRAY SIMPSON | CLIFTON LINKINS | SHANNELL STEWART |
|---|---|---|
| 1. | 2. | 3. |
| Armed Robbery | Attempted Armed Robbery | Attempted Armed Robbery |
| 4. | 5. | 6. |
| Use of a Handgun | Use of a Handgun | Use of a Handgun |
| 7. | 8. | 9. |
| 1st° Assault | 1st° Assault | 1st° Assault |

What happened to the charges along that assault line (Counts 7, 8, and 9) is also revealing. It was on Count 8, charging a first-degree assault on Clifton Linkins, that the appellant received a judgment of acquittal. Both counsel argued the point at length. The motion was granted because the judge was convinced that Linkins had not been placed in fear. All of the testimony that was referred to in illuminating that argument clearly referred to the "eleven o'clock incident" and not to the "eleven thirty incident."

In countering the defense argument that Yolanda Day had testified that Clifton Linkins openly defied, rather than feared, his two assailants, the State argued, "She said he complied with *them*." At another point in the argument over the motion, the trial judge, with the acquiescence of the State, used the plural in describing Clifton Linkins's reaction to the threats from his assailants:

The Court: Didn't he say that he knew that *they* weren't going to harm him or something along those lines?

Mr. DiLorenzo: *He said that* but obviously he wasn't too cooperative.

If Count 8, therefore, charged an assault on one of the victims as part of the "eleven o'clock incident," it follows that Counts 7 and 9 did the same with respect to the other two victims.

In a carefully drawn indictment, another of the dangers that a prosecutor must guard against is the failure of proof with

respect to a weapon ("The weapon was not produced;" "The weapon was not adequately described;" "The weapon was somehow obviously inoperable," etc.). Remove the deadly weapon from the crime of robbery with a deadly weapon and one is left with the crime of simple robbery. Remove the deadly weapon from the crime of attempted robbery with a deadly weapon and one is left with the crime of attempted simple robbery. Counts ten, eleven, and twelve provided for consummated and attempted simple robberies.

| LYRAY SIMPSON | CLIFTON LINKINS | SHANNELL STEWART |
|---|---|---|
| 1. | 2. | 3. |
| Armed Robbery | Attempted Armed Robbery | Attempted Armed Robbery |
| 4. | 5. | 6. |
| Use of a Handgun | Use of a Handgun | Use of a Handgun |
| 7. | 8. | 9. |
| 1st° Assault | 1st° Assault | 1st° Assault |
| 10. | 11. | 12. |
| Simple Robbery | Attempted Simple Robbery | Attempted Simple Robbery |

With respect to the consummated robbery (either armed or unarmed) of Lyray Simpson, moreover, there is, as a lesser included element, the actual theft of the seven dollars in cash and the jacket.

| LYRAY SIMPSON | CLIFTON LINKINS | SHANNELL STEWART |
|---|---|---|
| 1. | 2. | 3. |
| Armed Robbery | Attempted Armed Robbery | Attempted Armed Robbery |
| 4. | 5. | 6. |
| Use of a Handgun | Use of a Handgun | Use of a Handgun |
| 7. | 8. | 9. |
| 1st° Assault | 1st° Assault | 1st° Assault |
| 10. | 11. | 12. |
| Simple Robbery | Attempted Simple Robbery | Attempted Simple Robbery |
| 13. Theft | | |

A passing glance at that pattern reveals symmetry, parallel structure, integration, interrelated logic. The State's Attor-

ney's charging scheme leaps off the page with self-evident clarity. In the face of such a clear charging master plan, it is bizarre for the State now to claim that out of that integrated matrix of thirteen charges with respect to the "eleven o'clock incident," three of them should be randomly plucked out of context and inserted, instead, into a woefully tatterdemalion patchwork of charges with respect to the "eleven thirty incident." The State seeks to do this with respect to Counts 7 and 13, charging an assault on and a theft from Lyray Simpson, and Count 9, charging an assault on Shannell Stewart.

Why the prosecution would have chosen to create three gaping holes in its otherwise perfect and mutually reinforcing matrix of charges for the "eleven o'clock incident," the State does not attempt to explain. Why the prosecution, if it were planning to bring separate charges at all with respect to the "eleven thirty incident," would randomly have chosen only those three orphaned charges while neglecting, by way of obvious analogy to the "eleven o'clock incident," to bring ten other possible charges including the more significant ones, the State does not attempt to explain. There is no explanation.

The State's claim that the conviction for theft (Count 13) did not merge into the conviction for armed robbery (Count 1) is totally untenable for a more particularized reason. Count 13 expressly charged the appellant with the theft of United States currency and a jacket from Lyray Simpson. These items of property were taken in the course of the "eleven o'clock incident," not in the course of the "eleven thirty incident." Count 13, conversely, did not charge the appellant with the theft of narcotics, the only thing taken in the course of the "eleven thirty incident." Nothing further need be said with respect to the clearly compelled merger of the theft conviction (Count 13) into the armed robbery conviction (Count 1). Some other theft may have occurred at eleven thirty, but not the theft charged in Count 13.

After the jury returned its verdicts of guilty on all fourteen of the counts that had been submitted to it, the merger

question became very pertinent at sentencing. The sentencing judge directed that Counts 10, 11, and 12, charging one consummated simple robbery and two attempted simple robberies, would merge into Counts 1, 2, and 3, respectively, charging one consummated armed robbery and two attempted armed robberies.

With respect to the three original assault counts, one of them (Count 8) had already been removed from the case by the granting of a motion for a judgment of acquittal. The judge did not, however, merge the remaining two, Counts 7 and 9, into Counts 1 and 3, respectively, but imposed twenty-year sentences on each of them. Those sentences were consecutive to the twenty-year sentence on Count 1 but concurrent with each other and concurrent with the twenty-year sentence imposed on Count 2. It is with respect to the mergeability of those two counts that battle is now joined. The appellant maintains that the assault charges were lesser included offenses within the armed robbery and attempted armed robbery charges and should, therefore, have merged. The State maintains that the assault convictions were for criminal actions independent of the "eleven o'clock" armed robbery and attempted armed robbery and were, therefore, properly not merged.

If *ad hoc* support from the record were needed for our conclusion that the assault counts referred to the "eleven o'clock incident," it was there. During a colloquy between the Assistant State's Attorney and the trial judge over proposed jury instructions, an illuminating exchange took place. The issue was whether it was proper to give an assault instruction based on battery in addition to an assault instruction based on the placing of the victim in fear. The State argued and the judge agreed that the taking of the jacket from Lyray Simpson was the offensive touching necessary to support an assault instruction based on an actual battery:

There has been evidence of a battery and that was the offensive touching as the defendant physically took the jacket from Lyray Simpson, and that the battery, for lack of

a better word, the battery first degree assault instruction would apply to Lyray.

The Court: I find that there was testimony that the jacket had been forcibly removed and that there was that physical contact which was not consented to, so the assault by a battery is generated from the evidence.

The taking of the jacket from Lyray Simpson, of course, occurred in the course of the "eleven o'clock incident," not in the course of the "eleven thirty incident."

Such *ad hoc* support from the record, however, is redundant. Our holding, in an effort to resolve not only this but similar future claims, is more broadly based. We hereby assert that the question of whether certain counts charge crimes that are lesser included offenses within other counts or, on the other hand, charge unrelated criminal conduct, can frequently be resolved within the four corners of the indictment. In such situations, the answer to possible merger questions is, given the requisite convictions, foreordained before a word of testimony is taken.

Much of our holding today was presaged by the dissenting opinion in *Snowden v. State,* 76 Md.App. 738, 745–52, 548 A.2d 165 (1988). In *Snowden v. State,* 321 Md. 612, 583 A.2d 1056 (1991), the Court of Appeals reversed our majority decision in that case and essentially followed the reasoning of our *Snowden* dissent.

In *Snowden,* the defendant was involved in an armed robbery. He was convicted of the first-degree murder of one employee. That conviction had no bearing on the ultimate appellate issue. With respect to a second employee, the defendant was convicted of 1) armed robbery and 2) assault and battery. The assault and battery conviction was not merged into the armed robbery conviction. The defendant received consecutive twenty-year sentences on each.

In affirming, our majority opinion focused exclusively on the evidence without a thought for the pleadings. Within a single assault and battery count, it strained to separate the assault from the battery. It concluded that the armed robbery of the

victim was effected by an assault—the mere threat of force (by pointing a gun at the victim's back)—and that the actual battery of the victim (by shooting him in the arm) several minutes earlier constituted a distinct and, therefore, non-mergeable crime:

> It is clear that although the battery—the shooting of Mr. Stanidis—occurred during the perpetration of an armed robbery, it was not essential to effectuate the robbery. Thus, the rifle was used not only to accomplish the armed robbery, but also to shoot Mr. Stanidis. Although there was only one event, two crimes were committed. Therefore, we hold the offenses do not merge.

76 Md.App. at 745, 548 A.2d 165 (Citation omitted). The Court of Appeals reversed.

The dissenting opinion in our *Snowden* took issue with the majority's reading of the facts, as did the Court of Appeals. The dissent went further, however, and raised the pleading problem as an alternative ground for reaching the same decision:

> *If* the majority opinion is somehow suggesting that *there was not one battery but two,* one battery that was a necessary ingredient of the robbery and merged and another unrelated battery that did not merge, then *there is an obvious deficiency in the pleadings. This multi-count indictment included a single battery count, not two such counts.*

76 Md.App. at 751, 548 A.2d 165 (Emphasis supplied).

But for the substitution of the word "battery" for the word "assault," what was said in the *Snowden* dissent is precisely our present observation with respect to the ladder of descending charges against the appellant for his attack on Lyray Simpson:

> The configuration of the multi-count indictment makes it apparent that the ... flagship [charge] ... [was] ... robbery with a deadly weapon. The counts pyramided downward so as to include all lesser included offenses subsumed within the greater [charge]. *In such a pleading configura-*

*tion, it is inconceivable that the single battery count is not the battery which is part of a robbery but is, instead, some other unrelated battery.*

76 Md.App. at 751, 548 A.2d 165 (Emphasis supplied).

The questions raised by the *Snowden* dissent are precisely the questions that we would like to address to the State in this case:

> [I]f for some reason (such as the failure of the thieves to find any money [or the erosion of specific intent through voluntary intoxication]) the consummated robbery charge should fail, would the majority suggest that there could be no conviction for the lesser included battery because the only battery count in the indictment referred to some other and unrelated battery?

76 Md.App. at 751, 548 A.2d 165. If through a series of trial mishaps, the highest count left standing against the appellant for the "eleven o'clock" attack on Lyray Simpson were that of first-degree assault (Count 7), would the State concede that the appellant could not be convicted of that offense for the reason that the count referred to some other assault that occurred thirty minutes later? The State cannot have it both ways.

We would like to put another question raised in the *Snowden* dissent to the State in the present case:

> If, in the alternative, the facts would support a finding of two separate batteries, one as part of the robbery and one unrelated, would the majority opinion suggest that a single count could support two convictions and two separate sentences?

76 Md.App. at 751–52, 548 A.2d 165. What would the State's position be if the judge sentenced the appellant to twenty years imprisonment for the "eleven o'clock" assault on Lyray Simpson under Count 7 and then sentenced the appellant to a consecutive term of twenty years for the "eleven thirty" assault on Lyray Simpson under precisely the same Count 7?

Even if a single count (Count 7 or Count 9) may not support two convictions simultaneously, may it support either of two

alternative convictions interchangeably? Again, we would make in this case the precise observation made in the *Snowden* dissent:

> If the facts could somehow support a finding that there was a battery in this case unrelated to the robbery ... the short answer is that such an unrelated battery was never charged. If a single battery count could somehow support either of two separate batteries but not both, then we would have vagueness problems and double jeopardy problems that are mind-boggling.

76 Md.App. at 752, 548 A.2d 165.

With an elusiveness that is almost protean, the State frequently argues with respect to these merger issues that the charged assault remains as a readily available component of its greater inclusive offense when it is needed to plug a gap but that it may, in terms of intensity or duration, go beyond its obligation as a lesser included component element and, to the extent of such excess, sometimes also constitute an additional offense. It is an assault, therefore, that *both is and is not* a part of the greater inclusive offense.

What the State forgets when it makes this argument is that the object of such analysis is not assaultive behavior *per se* but a more rigidly circumscribed phenomenon—a formal charge of assault. The final section of the *Snowden* dissent dealt precisely with this aspect of the larger issue:

### Atom-Smashing Not Permitted

Once we have isolated a legal element, for merger purposes that element is, as we once thought the atom to be, indivisible. If the majority opinion is somehow suggesting that there was a single battery in this case but that because the battery employed a greater degree of force than was necessary to accomplish the robbery, that part of the battery which is excessive in degree does not merge, that would be to attempt to divide the indivisible. A legal element, notwithstanding that it may be measurable in degrees of force or other social harm, rises or falls, for

merger purposes, as a unit. It cannot be maintained that a necessary minimum amount of a legal element must merge but that any degree or amount above that minimum does not merge.

76 Md.App. at 752, 548 A.2d 165. The Court of Appeals placed its express imprimatur on that part of our *Snowden* dissent:

> [I]t is of no moment that the act constituting the lesser included offense may involve more force than necessary to support the greater crime. The "extra" force is not severed from the greater crime merely because it goes beyond that amount needed to sustain a conviction. As indicated in [the] dissent, "[i]t cannot be maintained that a necessary minimum amount of a legal element must merge but that any degree or amount above that minimum does not merge." *Snowden v. State,* 76 Md.App. at 752, 548 A.2d 165.

321 Md. at 619, 583 A.2d 1056.

What we hold today was precisely presaged by the *Snowden* dissent:

> Where a prefabricated, multi-count indictment pyramids downward, the ultimate merger issue is frequently resolved by the charging document itself.

76 Md.App. at 752, 548 A.2d 165.

We hold that it is obvious from the face of the indictment that Counts 7 and 13 charged lesser included offenses within the greater inclusive offense charged in Count 1 and that the convictions on Counts 7 and 13 should, therefore, have merged into the conviction for Count 1. For precisely the same reasons, the assault charged in Count 9 was a lesser included offense within the attempted armed robbery charged by Count 3 and the conviction under Count 9 should, therefore, have merged into the conviction for Count 3.

More broadly, we hold that in a multi-count indictment where a count qualifies in all regards as a lesser included offense within a greater inclusive offense which is also charged, that count will be presumptively deemed to be a

lesser included offense unless the charging document clearly indicates that such is not the case and that other unrelated criminal conduct is intended to be the subject of the count. The addition of a second assault count at the end of the indictment (and, therefore, out of the logical sequence for charging lesser included offenses) might well suffice.

■ The appellant's second contention will not detain us long. We find no abuse of discretion on the part of the trial judge in refusing to grant a mistrial or a motion for a new trial based on the assertion that several of the jurors inadvertently saw the appellant handcuffed and shackled as he was being transported back to jail. Even if this sighting actually occurred,[2] there is nothing in the record to indicate that the jury was prejudiced in any way by this incident. The jury in this case already knew that the appellant was being detained during the trial. As the trial judge pointed out:

> This is a case that through cross-examination of one of the State's witnesses it was brought out that he was in detention. That really was not a fact that was kept away from the jury in this case by the defense.

Moreover, the trial court instructed the jury, both during jury instructions and again at defense counsel's request, not to consider the appellant's detention in any way in assessing his guilt.

*CONVICTIONS FOR COUNTS 7 AND 13 VACATED AND MERGED INTO CONVICTION FOR COUNT 1; CONVICTION FOR COUNT 9 VACATED AND MERGED INTO CONVICTION FOR COUNT 3; JUDGMENTS OF CONVICTION IN ALL OTHER REGARDS AFFIRMED; COSTS TO*

---

2. The defense proffered that the jury had seen him shackled but offered no proof to establish that the incident occurred. Moreover, the trial judge apparently doubted that the incident occurred. When ruling on the motion the trial judge stated:

> The Court, even assuming that he was observed, and I'm not sure that that happened or didn't happen, I know he thinks he was, I'm going to consider the matter based on his perception, I don't find that that was prejudicial to him in this case at all.

*BE DIVIDED EQUALLY BETWEEN APPELLANT AND CHARLES COUNTY.*