REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

ON MOTION FOR RECONSIDERATION

No. 2100

September Term, 2012

---

BRANDON WALLACE

v.

STATE OF MARYLAND

---

Wright,
Nazarian,
Davis, Arrie. W.
    (Retired, Specially Assigned),

JJ.

---

Opinion by Nazarian, J.

---

Filed: October 1, 2014

Matthew Womack was beaten and robbed by two men in the early morning hours of November 4, 2011. Minutes before, he had engaged in a brief discussion with Brandon Bernard Wallace. Shortly after the robbery, Mr. Wallace was seen at two convenience stores where Mr. Womack's stolen credit card was used. After Mr. Womack identified Mr. Wallace as one of his assailants from a photo array, Mr. Wallace was arrested, charged, and convicted in the Circuit Court for Prince George's County of robbery and related crimes, but was ultimately acquitted of second-degree assault. Mr. Wallace appeals, contending that insufficient evidence supported the convictions and that the circuit court erred by failing to suppress an impermissibly suggestive extrajudicial identification, by allowing an improper prosecutorial comment, and by accepting inconsistent jury verdicts. We find no merit in his first three contentions and affirm his convictions for theft under $1,000 and credit card theft. Because we conclude that the circuit court erred by accepting legally inconsistent jury verdicts, however, we reverse Mr. Wallace's robbery conviction, in the process filling a gap in the evolving jurisprudence of legally inconsistent verdicts, and remand for resentencing on the remaining convictions.

## I. BACKGROUND

Mr. Womack caught a bus from work at 11:30 p.m. on November 3, 2011, and arrived at the Oxon Hill Road bus stop in Prince George's County between midnight and 1:00 a.m. on November 4. Upon his arrival, he was approached by Mr. Wallace. This was not, however, their first meeting—they had met and spoken two weeks before at that same bus stop, after Mr. Wallace tried to sell Mr. Womack a head set for three dollars.

Their discussion on November 4 lasted only a few minutes. While they spoke, two of Mr. Wallace's friends approached, and Mr. Womack became uneasy when one friend "made a look towards" him. He decided it was best that he leave, and as he left, Mr. Wallace inquired about the direction he was headed. Mr. Womack told him he was going north on Livingston Road, but instead went south, toward his home.

The lighting on Livingston Road dwindled as Mr. Womack traveled toward Stratwood Avenue, so he attempted to cross the street to a better-lit area. But as he looked for oncoming cars, two men came up behind him, each wearing dark hooded sweatshirts and ski masks that covered their mouths and noses but left their eyes exposed.[1] The two assailants first hit Mr. Womack from behind, then punched him in the face and knocked him to the ground. Then they flashed what appeared to be a shotgun and demanded Mr. Womack's money and possessions in urgently vulgar terms. In all, they took his cell phone and charger, security license, an ATM card, an ID holder, a pair of gloves, and a Baltimore Ravens jacket.

Mr. Womack phoned the police and accompanied them to the police station to provide an initial statement. Upon returning home, he contacted his bank to cancel his card, but was told that somebody used it that morning at several locations.

On November 22, 2011, Mr. Womack was contacted by Detective Jeffrey Konya, who requested a meeting to show Mr. Womack a photo array prepared by Detective Paul

---

[1] At trial, Mr. Womack described one of the assailants as six foot and approximately 165 to 200 pounds, and the other as six feet two inches and between 175 and 200 pounds.

2

Schweinsburg.  The two detectives visited Mr. Womack's home later that day and, before showing him the array, informed him that they had found the culprit.  Mr. Womack covered the lower halves of the faces to see the men as if they were wearing the half-mask his assailants wore and selected picture number five—the photo of Mr. Wallace. When asked why he selected this photo, he explained:

> Because when I was getting off the Metro bus, I was stopped and . . . the guy starting talking to me for at least five minutes. Then I walked away.  Dude asked me which way I was going to go home.  So I remember that.  I had some type of feeling that something was going to happen to me that night because why would somebody ask you which way you was going to go home. And I felt some type of way about it.  Then five minutes later, bam, I get robbed.  And I remember that conversation I had with him a couple weeks ago when he had said something to me prior to that.

The State obtained Mr. Womack's bank records, which showed that his stolen card was used multiple times shortly after the robbery.  The bank records showed that the card was used first for a $30.98 purchase at 5:01 a.m. at an Exxon on Old Branch Avenue in Camp Springs, but a corresponding receipt indicated that his card had been used there to make a $30.98 purchase at 1:01 a.m.  The records also showed that the card was used at 5:09 a.m. at the 7-Eleven adjacent to the Exxon, but no receipt was produced.  Surveillance stills produced by the State showed Mr. Wallace at the 7-Eleven that morning from 1:07 through 1:10 a.m., however.  These stills, along with stills from the Exxon,[2] showed Mr. Wallace

---

[2] The timestamp on the Exxon surveillance stills showed the man inside the store from 12:20 through 12:23 a.m.

wearing a dark hooded sweatshirt at each establishment in the early morning hours of November 4.[3]

Before trial, Mr. Wallace moved to suppress the extrajudicial identification provided by Mr. Womack. The circuit court held a suppression hearing on April 13, 2012, and denied the motion. Following a jury trial on August 23 and 27, 2012, Mr. Wallace was found guilty of robbery, theft under $1,000, credit card theft, and obtaining property by misrepresentation. The jury acquitted him of robbery with a deadly weapon and second-degree assault. The trial court sentenced Mr. Wallace on the robbery charge to fifteen years, with all but eight years suspended, to be followed by five years of supervised probation. It then stated that "[a]s to . . . the second degree offense, theft under a thousand the court finds that participation in the robbery[,] and the credit card theft, the third convicted offense, the Court will also merge."

## II. DISCUSSION

Mr. Wallace's brief lists five questions that we have revised to four: [4]

1.  Did the suppression hearing court err by denying [Mr. Wallace's] motion to suppress evidence of an out-of-court identification of him from a photo array?

2.  Did the trial court err by denying a motion for mistrial made during the prosecutor's rebuttal closing argument?

---

[3] Detective Michael Arnett recognized the man in the surveillance stills as Mr. Wallace and informed Detective Schweinsburg of the man's identity. Soon after, the police executed a search warrant on Mr. Wallace's residence and recovered a black and gray zip-up hoodie, like the one worn by the man in the stills.

[4] Mr. Wallace's third and fourth questions both addressed whether the trial court erred by accepting an inconsistent verdict.

3. Did the trial court err by accepting an inconsistent jury verdict?

[4]. Is the evidence legally insufficient to sustain [Mr. Wallace's] convictions?

We hold that sufficient evidence supported Mr. Wallace's convictions and that the circuit court properly denied his motion to suppress. We hold as well, though, that the circuit court erred in accepting inconsistent jury verdicts, and we reverse the robbery conviction.[5]

## A. The Circuit Court Did Not Err In Denying Mr. Wallace's Motion To Suppress.

Mr. Wallace argues *first* that the circuit court erred in denying his motion to suppress Mr. Womack's testimony identifying him from a photo array. Mr. Wallace argues that Mr. Womack's extrajudicial identification was impermissibly suggested when Detective Konya, before displaying the photo array, informed Mr. Womack that the police had "found the person that did it," and that this "made him believe that the photo array contained an image of the suspect." The State counters that the extrajudicial identification procedure was not impermissibly suggestive because the detectives did not indicate who should be chosen. We agree with the State.

---

[5] Given our disposition of the other arguments, we need not consider the propriety of the prosecutor's comment in his closing argument that, "[t]he victim met with the defendant. The defense doesn't deny that." We do, however, caution the prosecution to avoid such references in the future, particularly in cases like this one where the only defense witness who could deny that fact was Mr. Wallace himself.

5

In reviewing the circuit court's disposition of Mr. Wallace's motion to suppress, "'we look only to the record of the suppression hearing and do not consider the evidence admitted at trial.'" *James v. State*, 191 Md. App. 233, 251 (2010) (quoting *Massey v. State*, 173 Md. App. 94, 100 (2007)). We accept the findings of fact and credibility determinations of the circuit court unless they are clearly erroneous, and we examine the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party prevailing before the circuit court, in this case the State. *McFarlin v. State*, 409 Md. 391, 403 (2009). We review the trial court's conclusions of law *de novo* and make our own independent assessment by applying the law to the facts of the case. *Id.*; *see also Gatewood v. State*, 158 Md. App. 458, 475-76 (2004), *aff'd*, 388 Md. 526 (2005).

Extrajudicial identifications obtained through impermissibly suggestive procedures are not admissible. *James*, 191 Md. App. at 251-52. We look at the circumstances of Mr. Womack's identification of Mr. Wallace through a two-step process:

> The first is whether the identification procedure was impermissibly suggestive. If the answer is "no," the inquiry ends and both the extra-judicial identification and the in-court identification are admissible at trial. If, on the other hand, the procedure was impermissibly suggestive, the second step is triggered, and the court must determine whether, under the totality of the circumstances, the identification was reliable.

*Jones v. State*, 395 Md. 97, 109 (2006) (citations omitted). "The defendant bears the burden of proof in the first stage of the inquiry, and, if the defendant meets this burden, then the prosecution has the burden in the second stage of the analysis." *Upshur v. State*, 208 Md.

6

App. 383, 400-01 (2012) (citing *In re Matthew S.*, 199 Md. App. 436, 447-48 (2011)), *cert. denied*, 430 Md. 646 (2013); *see also James*, 191 Md. App. at 252 ("Although the reliability of the identification is the linchpin question, if the identification procedure is not unduly suggestive, then our inquiry is at an end." (Internal citation and quotation marks omitted.)).

The circuit court decided that Mr. Wallace had failed to carry his burden of establishing that the identification process was impermissibly suggestive, so it never reached the second step of the analysis. In looking at whether the identification was tainted by suggestiveness, we look in essence at whether the officers prompted Mr. Womack to identify Mr. Wallace:

> "To do something impermissibly suggestive is not to pressure or browbeat a witness to make an identification but only to feed the witness clues as to which identification to make. THE SIN IS TO CONTAMINATE THE TEST BY SLIPPING THE ANSWER TO THE TESTEE. All other improprieties are beside the point."

*Jenkins v. State*, 146 Md. App. 83, 126 (2002) (emphasis in original) (quoting *Conyers v. State*, 115 Md. App. 114, 121 (1997)) (observing that "the scope of identification procedures constituting 'impermissible suggestiveness' is extremely narrow"), *rev'd on other grounds*, 375 Md. 284 (2003); *see also Matthew S.*, 199 Md. App. at 448.

We agree with the circuit court that Mr. Wallace failed to meet his initial burden to prove impermissible suggestiveness. At the motions hearing, the circuit court heard testimony from Mr. Womack and Detectives Schwiensburg and Konya. Mr. Womack testified that prior to being shown the photo array, the detectives informed him that "they had

7

the person."[6]  He also testified, however, that the detectives "did not tell [him] how they found the person," nor did they give any kind of hint as to which photo he should choose from among those in the array.  Mr. Womack testified that he selected Mr. Wallace's photo believing that the array contained the person who robbed him, but not that the detectives told him so:

> To my knowledge I would have figured that if they said they believed to have found the person for what I had provided to them, I was to believe that they had the person in the photo line up and that's when I had made my decision this is the guy that did it.

We were presented with a comparable circumstance in *Gatewood*, 158 Md. App. 458. In that case, an arresting officer was to serve as a witness in the prosecution of a defendant charged with various drug crimes.  *Id.* at 471-72.  But before being presented with a photo array, the detective who prepared the array indicated to the arresting officer that "[he] knew who [the suspect] was," *id.* at 472, implicitly "suggesting that [the] person's photograph was in the array." *Id.* at 476.  When presented with the array, the arresting officer ultimately selected the suspect referred to by the detective.  In determining whether the detective's statements were impermissibly suggestive, we recognized that although "'[t]he chance of misidentification is . . . heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime,'" *id.* (quoting *Simmons v.*

---

[6] Detective Schweinsburg denied ever making such a statement to Mr. Womack, and Detective Konya was never questioned on the subject.  But because such a statement does not amount to impermissible suggestiveness anyway, we assume that it was made.

*United States*, 390 U.S. 377, 383 (1968)), each case must "nevertheless be judged on its own facts." *Id.* Considering that the detective "left it to [the witness] to select the photograph of the person who had [committed the crime at issue]," and that "the circuit court was entitled to consider that [the witness] could reasonably expect that the array shown to him would have contained a suspect," we held that the extrajudicial identification procedure was not impermissibly suggestive. *Id.*[7]

We reach the same conclusion here. The detectives did not "'contaminate the test by slipping the answer to [Mr. Womack],'" *Jenkins*, 146 Md. App. at 126 (quoting *Conyers*, 115 Md. App. at 121); they left it to him to select the photograph of the person who robbed him. And because the detective "did not in any way suggest which photograph or photographs were of the suspect or give any indication why the person in the photograph was

---

[7] We also cited *United States v. Gambrill*, 449 F.2d 1148 (D.C. Cir. 1971), in which the court acknowledged the reality that witnesses likely assume that the suspect is among the people in a lineup:

> Law enforcement personnel should avoid telling a witness that a definite suspect is in a lineup but it is not absolutely impermissible. . . . It must be recognized, however, that any witness to a crime who is called upon to view a police lineup must realize that he would not be asked to view the lineup if there were not some person there whom the authorities suspected.

*Gatewood*, 158 Md. App. at 476 n.6 (quoting *Gambrill*, 449 F.2d at 1151 n.3). And although we recognized that "the lineup procedure is less likely than a photo array to suffer from this tactic," we considered the court's observation in *Gambrill* relevant to photo arrays as well. *Id*.

suspected of having committed the robbery," *State v. Bolden*, 243 N.W.2d 162, 164 (Neb. 1976) (cited by *Gatewood*, 158 Md. App. at 477 n.6), Mr. Wallace's arguments do not support a finding of impermissible suggestiveness. The circuit court did not err in ruling that Mr. Wallace failed to sustain his burden of showing that the identification procedure used by the police was unduly suggestive, and on that basis denying his motion to suppress Mr. Womack's extrajudicial identification. That ends the inquiry. *See James*, 191 Md. App. at 252; *Jones*, 395 Md. at 109.

**B.     Sufficient Evidence Existed To Support Mr. Wallace's Convictions.**

Mr. Wallace argues *next* that insufficient evidence existed to support his convictions.[8] Mr. Wallace acknowledges that "there is [no] doubt that Matthew Womack was the victim of a robbery," but he argues that the prosecution failed to produce sufficient evidence to establish that he was one of the robbers involved in the crime. We disagree.

In reviewing a sufficiency challenge, we must "determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Taylor v. State*, 346 Md. 452, 457 (1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is not our role to measure the weight of the evidence; instead, we consider "only whether the verdict

---

[8] Robbery is "'the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear, or, more succinctly, as larceny from the person, accompanied by violence or putting in fear.'" *Ball v. State*, 347 Md. 156, 184 (1997) (quoting *West v. State*, 312 Md. 197, 202 (1988)).

10

was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Id.* (citing *State v. Albrecht*, 336 Md. 475, 478-79 (1994)). "We defer to any possible reasonable inferences the jury could have drawn from the admitted evidence and need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence." *State v. Mayers*, 417 Md. 449, 466 (2010).

Because Mr. Wallace concedes that a robbery did, in fact, occur, one fact inferred by the jury is of crucial importance here: that Mr. Wallace was, in fact, one of two men who robbed Mr. Womack. We focus, then, while reviewing the evidence in a light most favorable to the State, on whether any rational jury could have drawn this same inference.

The jury's inference relied primarily upon circumstantial evidence produced by the State regarding Mr. Wallace's whereabouts between the time he spoke with Mr. Womack at the bus stop and when surveillance cameras captured him making purchases at the same time and at the same stores at which Mr. Womack's stolen credit card was used. "A conviction can rest on circumstantial evidence alone," but such a conviction "cannot be sustained on proof amounting only to strong suspicion or mere probability." *Taylor*, 346 Md. at 458 (citing *Wilson v. State*, 319 Md. 530, 535-36 (1990)). The circumstantial evidence may "not require the trier of fact to resort to speculation or conjecture," and if this is the case, and there is "no solid factual foundation, there can be no conviction." *Id.* Put differently, "when the

11

evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained." *Id.* (citing *Hebron v. State*, 331 Md. 219, 234 (1993)).

Indeed, the parties propose two alternative versions of the events in the time between the meeting at the bus stop and Mr. Wallace's visits to Exxon and 7-Eleven: the State argued that Mr. Wallace committed the robbery in that intervening time, while Mr. Wallace contended that the connection was mere coincidence. A review of the record in the light most favorable to the prosecution demonstrates a solid factual foundation upon which a rational factfinder could agree with the State:

- Mr. Wallace and Mr. Womack had met twice at the bus stop prior to the robbery: once two weeks prior and again shortly before the robbery. In total, the two spoke for between twelve and eighteen minutes.

- Shortly after the second meeting, during which Mr. Wallace asked Mr. Womack where he was going, and just down the road from their meeting point, Mr. Womack was robbed of his credit card, among other items, by two masked men.

- Shortly thereafter, Mr. Womack's card was used at an Exxon and a 7-Eleven in the vicinity of the robbery, and Mr. Wallace was caught on surveillance purchasing items from those same stores in the hours following the robbery.

- The assailants wore dark hooded sweatshirts, Mr. Wallace was wearing a black and gray sweatshirt in the surveillance stills, and that same sweatshirt was found in his room months later.

The connection between these pre- and post-robbery circumstances was strengthened further by Mr. Womack's identification of Mr. Wallace at the scene of the crime as a result of his

prior interactions with him. Mr. Womack testified that from those prior interactions, he recognized the eyes and voice of one of his assailants as those of Mr. Wallace.

The circumstantial evidence produced by the State, coupled with Mr. Womack's identification, could readily have allowed the jury to infer that Mr. Wallace was one of the men who robbed Mr. Womack. The evidence on the record tying Mr. Wallace to the robbery (which he admits occurred) supports a finding that the jury's inference was reasonable. And, as we noted above, "[w]e defer to any possible reasonable inferences the jury could have drawn from the admitted evidence." *Mayers*, 417 Md. at 466. As such, after viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact *could* have found beyond a reasonable doubt that Mr. Wallace committed the crimes for which he was charged.

**C.    The Circuit Court Erred By Accepting An Acquittal On A Lesser-Included Offense Of A Crime For Which Mr. Wallace Was Convicted When Those Crimes Arose During The Same Criminal Transaction.**

*Finally*, Mr. Wallace challenges the circuit court's decision to accept what he characterizes as a legally inconsistent jury verdict. At the conclusion of the trial, the jury found Mr. Wallace guilty of robbery, among other charges, but not guilty of second-degree assault. After the verdicts were read, Mr. Wallace's counsel objected to the alleged verdicts,[9]

_____

[9] Mr. Wallace properly raised an inconsistent verdict challenge before the circuit court, and the State does not argue otherwise. *See McNeal v. State*, 426 Md. 455, 466 (2012) (quoting *Price v. State*, 405 Md. 10, 40-42 (2008) (Harrell, J., concurring)).

and counsel for *both* Mr. Wallace and the State initially requested that the case be sent back to the jury to resolve the inconsistency. But after a brief recess, the State changed course and opposed Mr. Wallace's contention of legal inconsistency. The circuit court agreed and declined Mr. Wallace's request.[10]

Mr. Wallace argues here that second-degree assault is a lesser-included offense of robbery, and therefore that the acquittal for second-degree assault was legally inconsistent with the guilty verdict for robbery. The State counters that the verdicts were not legally inconsistent because the evidence produced at trial supported two separate and distinct instances of assault. "We review *de novo* the question of whether verdicts are legally inconsistent. This is so because we review the elements of the offense at issue in light of the jury instructions." *Teixeira v. State*, 213 Md. App. 664, 668 (2013).

### 1. Legally inconsistent verdicts generally

Legally inconsistent jury verdicts in criminal cases are no longer acceptable in Maryland.[11] *See McNeal v. State*, 426 Md. 455, 458 (2012); *Price v. State*, 405 Md. 10, 35

---

[10] Mr. Wallace also filed a post-judgment motion to strike the inconsistent verdicts, but this motion was also denied. But as we explain, the error was in declining to send the case back to the jury for further deliberations. *See Price*, 405 Md. at 41-42.

[11] For an in-depth review of the jurisprudential evolution of inconsistent verdicts, *see Travis v. State*, __ Md. App. __, No. 1174, Sept. Term 2013, at 25-44 (filed August 26, 2014). *Travis* sets a useful legal backdrop for our discussion of inconsistent jury verdicts, but doesn't fully answer the question before us here. That case involved a challenge to the consistency of verdicts issued in a bench trial, whereas this case involves purportedly inconsistent verdicts issued by a jury, and *Travis* did not turn (as this case does) on the number of criminal transactions pled and proven. In *Travis*, we cautioned that "[b]etween
(continued...)

(2008) (Harrell, J., concurring); *Teixeira*, 213 Md. App. at 678-79. "A legally inconsistent

verdict is one where the jury acts contrary to the instructions of the trial judge with regard

to the proper application of the law."[12] *McNeal*, 426 Md. at 458 (citing *Price*, 405 Md. at

35). More specifically, "[v]erdicts where a defendant is convicted of one charge, but

acquitted of another charge *that is an essential element of the first charge*, are inconsistent

as a matter of law."[13] *Id.* (emphasis added).

> The underlying purpose of this rule is to ensure that an individual is not convicted of a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all. A person cannot be convicted of a crime if a jury has necessarily decided that one of the essential elements was not proven beyond a reasonable doubt.

*Teixeira*, 213 Md. App. at 680 (internal quotation marks omitted) (quoting *People v.*

*Muhammad*, 17 N.Y.3d 532, 539 (2011)).

-------------------

[11](...continued)
jury trials and bench trials, . . . there are more dissimilarities than similarities in handling their respective inconsistencies," *id.* at 53, and advised that courts should "carefully differentiate between the different types of inconsistency and refrain from trying to squeeze dissimilar problems under a single umbrella." *Id.*

[12] A legally inconsistent verdict is different than a factually inconsistent verdict. "Factually inconsistent verdicts are those where the charges have common facts but *distinct legal elements* and a jury acquits a defendant of one charge, but convicts him or her on another charge." *McNeal*, 426 Md. at 458 (emphasis added). Factually inconsistent verdicts, while illogical, are permissible.

[13] In other words, "legally inconsistent verdicts are those where a defendant is acquitted of a 'lesser included' crime embraced within a conviction for a greater offense." *McNeal*, 426 Md. at 458 n.1.

In *Price*, *McNeal*, and *Teixeira*, the touchstone for determining whether verdicts were legally inconsistent was whether "[t]he crime for which appellant was acquitted, and the crime for which he was convicted, each contained elements that the other did not."[14] *McNeal v. State*, 200 Md. App. 510, 517 (2011) (citing *Tate v. State*, 182 Md. App. 114, 131-32 (2008)), *aff'd*, 426 Md. 455 (2012). But the parties agree here (as do we) that second-degree assault, the charge for which Mr. Wallace was acquitted, was a lesser-included offense of robbery, for which he was convicted,[15] so the two crimes indisputably have common elements.

Instead, the question here is more one of pleading than of law: whether the two charges arose from one criminal transaction (as Mr. Wallace argues)—*i.e.*, that the alleged

---

[14] In *Price*, *McNeal*, and *Teixeira*, the analysis centered upon whether the crime for which the defendant was acquitted was a lesser-included offense of the crime for which the defendant was convicted. *See Price*, 405 Md. at 37; *McNeal*, 426 Md. at 472-73; *Teixeira*, 213 Md. App. at 681-82.

[15] In determining whether two offenses are the same, we apply the required evidence test. *Snowden v. State*, 321 Md. 612, 616 (1991). "'The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements,'" the former is a lesser-included offense of the latter. *Graham v. State*, 117 Md. App. 280, 288 (1997) (quoting *Snowden*, 321 Md. at 617). Applying the required evidence test, courts of this State have recognized that

> robbery is a lesser included offense of armed robbery. Simple assault is a lesser included offense of both robbery and armed robbery. Like a little fish being eaten by a bigger fish which in turn is eaten by a yet bigger fish, simple assault is swallowed by robbery which then is swallowed by armed robbery.

*Gerald v. State*, 299 Md. 138, 140-41 (1984).

assault was also the force element of the robbery—or two separate and distinct criminal transactions, each capable of giving rise to separate, and possibly factually inconsistent, verdicts (as the State contends). If one criminal act gave rise to both charges, the jury's verdicts would be *legally* inconsistent because the jury, by acquitting him of second-degree assault, negated a necessary element of robbery. If, on the other hand, the jury was presented with two separate criminal acts, the verdicts would be, at most, factually inconsistent.

The question of whether the charges arose from one or more than one criminal transaction asks essentially the same question we ask when we determine whether convictions merge.[16] *See Morris v. State*, 192 Md. App. 1, 39 (2010) ("To evaluate the legality of the imposition of separate sentences for the same act, we look first to whether the charges 'arose out of the same act or transaction,' then to whether 'the crimes charged are the same offense.'" (quoting *Jones v. State*, 357 Md. 141, 157 (1999))). The State bears the "burden of proving distinct acts or transactions for purposes of separate units of

---

[16] The appellant in *Dansbury v. State*, 193 Md. App. 718 (2010), raised the same-transaction issue before this Court in the inconsistent jury verdict context, but the case was decided on a separate and dispositive ground, so we declined to reach it there. *Id.* at 722.

It is true that at least two of our pre-*Price* cases have held that merger is not appropriate when a jury has acquitted the defendant of a lesser-included charge. *See Dorsey v. State*, 9 Md. App. 80, 88 (1970) ("We have consistently held that the doctrine of merger, which may be applied to avoid multiple convictions at the same trial, does not apply where there is an acquittal of the lesser crime and a conviction of the greater crime at the same trial, or conversely."); *Tyler v. State*, 5 Md. App. 158, 161 (1968). We wonder, in light of *Price* and its progeny, whether these cases remain good law at this point. But we need not and do not decide that question—we simply find the merger analysis a useful analogy for thinking through whether the assault at issue here is transactionally distinct from the robbery.

17

prosecution," *id.* (citing *Snowden v. State*, 321 Md. 612, 618 (1991)), and argues here that the *testimony* offered at trial supports a finding of separate instances of assault. But this determination "is, given the requisite convictions, foreordained before a word of testimony is taken." *Thompson* v. State, 119 Md. App. 606, 617 (1998). "The pertinent question is not whether more than one assault was conceivably proved. It is whether more than one assault was *actually charged* and, if not, then which of several possible assaults was the only assault charged." *Id.* at 609 (emphasis added).

We addressed the same-transaction analysis at length in *Morris*. The defendant in that case was involved in a robbery and was convicted and sentenced for charges of both assault and robbery. 192 Md. App. at 7. There, we asked "whether appellant's first-degree assault convictions were distinct acts or whether they arose out of the acts of armed robbery against [the victims]," *id.* at 40, and thus whether they should have been merged by the sentencing court. Instead of looking to the evidence, as the State had proposed, *id.* at 42, we looked to the indictment and jury instructions to determine whether it had been made clear to the jury that an act of assault separate from the one explicitly charged underlay the robbery charge. *Id.*; *see also Snowden*, 321 Md. at 619. We observed that "when the indictment or jury's verdict reflects ambiguity as to whether the jury based its convictions on distinct acts, *the ambiguity must be resolved in favor of the defendant*." *Morris*, 192 Md. App. at 39 (emphasis added) (citing *Williams v. State*, 187 Md. App. 470, 477 (2009)). And because "neither the [indictment] nor the jury instructions made clear that the charges of assault were

18

based upon separate and distinct acts from those upon which the robbery charges were based," we resolved the ambiguity in favor of the defendant, found that the assault and robbery arose from the same criminal transaction, and held that the sentencing court erred by failing to merge the assault charge into the robbery charge. *Id.* at 44.

We also looked back to our earlier decisions in *Gerald v. State*, 137 Md. App. 295 (2001), and *Williams*, 187 Md. App. 470, cases in which the State argued that the *evidence introduced at trial* was sufficient to establish that the defendant's act of assault was an act distinct from the act of robbery at issue. *See Morris*, 192 Md. App. at 42-43. In *Gerald*, we rejected this argument because, again, it focused on the proof rather than the indictment:

> The court instructed the jury on the elements of each charge, but it did not explain how the assault and robbery charges related to one another, how they differed, and what the jury needed to find to convict under both charges. *See Graham v. State*, 117 Md. App. 280, 289 (1997) (no ambiguity where the court clearly explained the difference between the two counts at issue). . . . *With an ambiguity in the indictment, and non-curative instructions*, the first degree assault conviction must indeed merge into the robbery conviction.

*Morris*, 192 Md. App. at 42 (emphasis added) (citing *Gerald*, 137 Md. App. at 312). We made the same point again in *Williams*:

> "[Defendant's] charging document is ambiguous as to the particular act for which he was charged with first degree assault of [the victim]. *See Gerald*, 137 Md. App. at 312 (conviction for first degree assault merges into a conviction for robbery with a dangerous and deadly weapon when the charging document is ambiguous as to the particular act alleged to have constituted first degree assault). Moreover, the court did not instruct the jury as to 'how the assault and robbery charges related to one

19

another, how they differed, and what the jury needed to find to convict under both charges.' *Id.* (citations omitted). *In light of the court's failure to give curative instructions, and the ambiguity of [defendant's] charging document, we must resolve the question of whether the charges of robbery and assault of [the victim] were based upon the same conduct in [defendant's] favor. Id.*"

*Morris*, 192 Md. App. at 43 (emphasis added) (quoting *Williams*, 187 Md. App. at 477).

Put another way,

> "If the facts could somehow support a finding that there was [an assault] in this case unrelated to the robbery . . . the short answer is that such an unrelated [assault] was never charged. If a single [assault] count could somehow support either of two separate [assaults] but not both, then we would have vagueness problems and double jeopardy problems that are mind-boggling."

*Thompson*, 119 Md. App. at 620 (quoting *Snowden v. State*, 76 Md. App. 738, 752 (1988), (Moylan, J., concurring and dissenting), *rev'd*, 321 Md. 612 (1991)).

In this case, the State argues that the jury could have inferred from the evidence introduced at trial that the act underlying Mr. Wallace's second-degree assault charge was an act distinct from the robbery of Mr. Womack.[17] Simply put, the separate assault was never

---

[17] This despite the fact that the State's own closing argument illustrated the ambiguity:

> The Judge just instructed you on the offenses the defendant is charged with. You have here the verdict sheet in front of you. Second degree assault is one of the offenses. Second degree assault is causing physical harm or offensive physical contact to another.
>
> There is your second degree assault right there. Hitting

(continued...)

20

charged.  But the indictment is ambiguous as to the particular act giving rise to the second-

degree assault charge.[18]  And we see no curative instruction to the jury explaining "how the

[17](...continued)
> him, pushing him down on the grounds, hurting his eye, hurting
> his knee.
>
> ***
>
> And then the robbery.  Robbery is the taking of property
> by force.  We know we have the taking of property covered, *and
> the force we know pushing him down to the ground, hitting him,
> and pointing a gun at him, all the things that create force*.

(Emphasis added.)  Even the State doesn't argue that the charging documents or jury instructions identified two separate and distinct acts, however.

[18] The indictment read as follows:

> THE GRAND JURORS FOR THE BODY OF PRINCE
> GEORGE'S COUNTY, ON THEIR OATH DO PRESENT
> THAT **BRANDON BERNARD WALLACE** ON OR ABOUT
> THE 4TH DAY OF NOVEMBER, TWO THOUSAND AND
> ELEVEN, IN PRINCE GEORGE'S COUNTY, MARYLAND
> DID FELONIOUSLY ROB MATTHEW LAWRENCE
> WOMACK OF PERSONAL PROPERTY TO INCLUDE
> CELLULAR PHONE, TD BANK CARD, JACKET AND
> BAG, IN VIOLATION OF **§ 3-402 OF THE CRIMINAL
> LAW ARTICLE** AGAINST THE PEACE, GOVERNMENT
> AND DIGNITY OF THE STATE. **(ROBBERY)**
>
> ***
>
> THE GRAND JURORS FOR THE BODY OF PRINCE
> GEORGE'S COUNTY, ON THEIR OATH DO PRESENT
> THAT **BRANDON BERNARD WALLACE** ON OR ABOUT
> THE 4TH DAY OF NOVEMBER, TWO THOUSAND AND
> ELEVEN, IN PRINCE GEORGE'S COUNTY, MARYLAND

(continued...)

21

assault and robbery charges related to one another, how they differed, and what the jury

needed to find to convict under both charges."[19] *Morris*, 192 Md. App. at 43 (internal

_____

[18](...continued)
ASSAULTED MATTHEW LAWRENCE WOMACK IN THE
SECOND DEGREE, IN VIOLATION OF § 3-203 OF THE
CRIMINAL LAW ARTICLE AGAINST THE PEACE,
GOVERNMENT AND DIGNITY OF THE STATE. **(2ND
DEGREE ASSAULT)**

[19] The jury instructions read as follows:

**MPJI-Cr 4:01: SECOND DEGREE ASSAULT**
The defendant is charged with the crime of assault.
Assault is causing offensive physical contact and/or physical
harm to another person.  In order to convict the defendant of
assault, the State must prove:
(1) that the defendant caused offensive physical contact with
and/or physical harm to Matthew Lawrence Womack; and
(2) that the contact was the result of an intentional or reckless
act of the defendant and was not accidental.

\*\*\*

**MPJI-Cr 4:28: ROBBERY**
**A**
**TAKING AND CARRYING AWAY**
The defendant is charged with the crime of robbery. Robbery is
the taking and carrying away of property from someone else by
force or threat of force, with the intent to deprive the victim of
the property.  In order to convict the defendant of robbery, the
State must prove:
(1) that the defendant took the property from Matthew Lawrence
Womack;
(2) that the defendant took the property by force or threat of
force; and
(3) that the defendant intended to deprive Matthew Lawrence

(continued...)

22

quotation marks omitted) (quoting *Williams*, 187 Md. App. at 477); *see also Snowden*, 321 Md. at 619 (recognizing that had the case before it been a jury trial, it "could have looked to the judge's instructions in hope of illuminating the rationale behind the verdicts"); *Thompson*, 119 Md. App. at 611 (requiring the separate assault offenses to be "clearly and distinctly charged as part of the Grand Jury indictment").

In accordance with *Morris*, *Gerald*, *Williams*, and *Thompson*, and in light of the ambiguities apparent in the indictment and jury instructions, we hold that Mr. Wallace's second-degree assault and robbery charges arose from the same criminal transaction. And because the elements of second-degree assault are included within the greater offense of robbery, the acquittal on the second-degree assault charge was legally inconsistent with the guilty robbery verdict, and the circuit court erred in accepting those legally inconsistent verdicts. The conviction imposed for robbery must be reversed, and because the sentencing court merged the remaining offenses with it, we remand for resentencing on those counts.

> **CONVICTION FOR ROBBERY REVERSED; JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED AS TO COUNTS 8, 9, AND 10, AND REMANDED FOR**

---

[19](...continued)
> Womack of the property.
> Property means anything of value. Deprive means to withhold property of another permanently, for such a period as to appropriate a portion of its value, with the purpose of restoring it only upon payment of a reward or other compensation, or to dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it.

23

**RESENTENCING. COSTS TO BE DIVIDED EVENLY BETWEEN APPELLANT AND APPELLEE.**